## WILLIAM McD. SIMS *v.* WILLIAM CONGER et al.

1. WILL: CONTINGENT LIMITATION OVER MADE IN CASE FIRST TAKER DIES: CONSTRUCTION OF.—The rule is well settled that, in a bequest to A, and "in case he dies," or "in the event of his death," simply, without any further words of contingency, then over to B, the contingency intended is the death of A before the testator; for, death being a certain and inevitable event at some time, and in no sense contingent except as associated with other circumstances, as death without issue, or death before or after a certain other event, and the like, the testator cannot be supposed to have made the death of A *at any time* the contingency upon which the limitation over

William McD. Sims *v.* William Conger et al.

to B is to take effect; and the contingency of A's dying before the testator is adopted as the most reasonable interpretation of the testator's meaning. See *Hinkley* v. *Simmons*, 4 Ves. Jr. 160; *King* v. *Taylor*, 5 Id. 806; *Cambridge* v. *Rouse*, 8 Id. 12; *Webster* v. *Hale*, 8 Id. 410; *Ommaney* v. *Beavan*, 18 Id. 291; *Wright* v. *Stephens*, 4 Barn. & Ald. 674. But this technical rule of construction will yield where there are other expressions or dispositions in the will which indicate a contrary intention. See *Billings* v. *Sandom*, 1 Bro. C. C. 393; *Nowlan* v. *Neeligan*, Id. 489; *Ld. Douglas* v. *Chalmer*, 2 Ves. Jr. 501; *Chalmers* v. *Stovil*, 2 Ves. & Bea. 222.

2. SAME: SAME: WHEN THERE IS A PRECEDENT PARTIAL INTEREST.—When, by the terms of the will, the gift to the legatee is not immediate, but in remainder, or preceded by a life or other partial interest, with an executory limitation over "in case of the death of the legatee," or like words, then the words of contingency will be applied to the period when the remainder takes effect in possession, viz., the determination of the preceding interest, and not to the death of the testator. And in such a case, if the legatee die before the determination of the interest which precedes his, the estate would go over to the ulterior legatee; but if he survive the party holding the preceding interest he will hold absolutely, and the interest of the ulterior legatee will be defeated. See 1 Roper on Legacies, 409; 2 Jarm. on Wills, 693, 665; *Galland* v. *Leonard*, 1 Swanston, 161; *Harvey* v. *McLaughlin*, 1 Price, 264; *Da Costa* v. *Kerr*, 3 Russ. 360.

3. SAME: HOW TECHNICAL WORDS CONSTRUED.—Technical words in a will are to be interpreted in their established legal sense, unless a contrary meaning clearly appears from the context.

4. SAME: 26TH SEC., P. 610, HUTCH. DIG., CONSTRUED: WHEN CONTINGENT LIMITATION TAKES EFFECT.—The 26th section of the Statute of Conveyances, Hutch. Dig., p. 610, provides that "every contingent limitation in any deed or will, made to depend upon the dying of any person without heirs, heirs of the body, or without issue or issue of the body, or without children, offspring, or descendants, or other relatives, shall be held and interpreted a limitation to take effect when such person shall die not having such heir, or issue, or child, &c., living at the time of his death, &c., unless the intention of such limitation be otherwise expressly and plainly declared on the face of the deed or will creating it." This section not only establishes the legal interpretation of the words, "dying without heirs, dying without issue," in such a contingent limitation, to be a "definite failure" of heirs, issue, &c., but also provides for the period at which such contingent limitation shall take effect, to wit, the death of the person upon whose death without issue, &c., the limitation over is made. Therefore, where a bequest is made to A "when he shall arrive at twenty-one years of age," and, "if he should die without issue," then over to B: if A should attain his majority, receive the estate, and then die without issue, the limitation to B will be good.

5. SAME: SAME: CASE IN JUDGMENT.—The testatrix directed that her executor should carry on her plantation until her son A should arrive at twenty-one years of age, and "when her son arrived at that age" she gave him

all her estate ; and she requested her son to select her executor as his guardian, so that the plantation might be carried on by him, both as guardian and as executor, until her son should arrive at twenty-one years of age. And she further directed, in the sixth item of her will, that in case her son should die before she did, that her estate should go to certain of her relatives named in the will ; and by the seventh item she directed " that should her said son A die without lawful issue, that all the property and its increase which it is hereby intended he shall inherit from her shall descend in like manner " as directed in item sixth. The son survived the testatrix, and after his attaining his majority and receiving the property died without issue :—*Held*, that A took an estate in fee on his attaining his majority, determinable on his dying without issue, and upon that contingency an executory devise was limited to the parties named in the sixth and seventh items of the will, and that upon A's death without issue they were entitled to the estate. See *Jordan* v. *Roach*, 32 Miss. R. 481–604; 1 Jarm. on Wills, 237.

APPEAL from the Chancery Court of Claiborne county. Hon. Hiram Cassidy, chancellor.

*F. Anderson* and *George V. Moody,* for the appellants.

(The argument of Mr. Anderson, on the first argument of the case, only is given, as Mr. Moody did not present any views of the case materially different from those presented in Mr. A.'s argument. Their joint argument, made on the reargument of the cause, is also given.)

As far as my examination of the principles and authorities bearing on the question has extended, I think they clearly settle it in favor of the appellants.

The question is not as to the validity of a *limitation over*, upon a dying without issue, generally, since, under our statute, such words importing a definite failure of issue, such a limitation would not be too remote ; but the question is one of intention. What did the testatrix mean ? Did she mean to give her son the entire property on his arriving at twenty-one, or did she intend so to limit and restrain her bounty to him as to make his interest only a life-interest, or, what is the same thing, to give him an estate which would be defeasible on a contingency which could only be determined at the hour of his death, thus depriving him during the whole period of his life of the full and entire owner-

ship of his property, and reducing the value of her bounty by at least one-half?

There are numerous cases identical with this in which, where language is in the first instance employed which gives an *absolute estate as here*, subsequent clauses of limitation over, identical in language with that employed here, will, in the absence of any other circumstance found in the will by which to limit the time at which an absolute interest shall vest, be held referable for the time of happening of the contingency to the lifetime of the testator himself, even in face of the plain general presumption that he would not be providing for the case of a lapse, and this where there was no other policy of the law to be promoted than the inclination of the courts and the manifest propriety, on the ground of public policy, of expediting the time when the absolute ownership of property shall be fixed. These cases will be cited presently; but the courts have gone much further in cases where the first taker is, as here, the heir and principal object of the bounty of the testator, and where in the first instance words of absolute gift have been employed, in requiring any subsequent words of limitation over to be so clear and unequivocal as to admit of only one construction before they will be permitted to interfere with the absolute nature of the first gift. In the language of Lord Brougham, in 7 Cond. Eng. Ch. R. 243, " Legacies, so given to vest at a specified time and so secured to the objects of the gift exclusively, can only be revoked—for partially they are revoked if converted into life-interests—can only be so altered and retracted by the most plain and unambiguous and unequivocal proviso."

Before proceeding to cite the authorities, I will state some general propositions well settled by them. Thus, a bequest to A, and, in case of his death, to B, is construed to mean in the event of A's dying in the lifetime of the testator, and the gift is absolute to A if he survives the testator, although such construction involves the idea that the testator was contemplating a lapse of his legacy by his own survivorship, which is certainly against the natural presumption in such cases.

Again, in case of a bequest to A for life, and *after* his decease to *B*, and, in case of B's death, to his child or children or to C,

the contingency is held referable to the lifetime of *A*, the first taker or life-holder, and the bequest over only takes effect in case of B's death during the continuance of the life-estate. He takes absolutely if he survives the tenant for life. And again a bequest to A, when and if he attain twenty-one years, and, in case of his death, to B, is a gift absolute to A, unless he dies under twenty-one.

1. The propositions stated above have been universally applied in England (and the decisions have been followed in this country) where limitations over have been made by words importing a contingency, but where the contingency specified is not more definite than generally the death at any time of the first taker, on the idea that an event so *inevitable* as death would not alone have been adopted as a contingency, and on the additional, and I think it will be conceded the more forcible, ground, that good policy requires that the time for the absolute vesting of the estate in some one ought by all means to be expedited, even in cases where there is no apparent or presumed intention to make the first taker the main object of *bounty*. See the able opinion of Lord Brougham, in 7 Eng. Cond. Ch. R. 238, *Pillan* v. *Home.*

2. But the courts have gone much further, and have held that where a real contingency has been adopted—as, " *dying without leaving children*," or, " dying leaving children," or, " dying without leaving issue," or, " dying leaving issue," (all of which are valid limitations, as not being too remote, when applied to personal property in England,)—yet if such a contingency follows a bequest under which there is only to be an *absolute vestiture*, whether in interest or possession of the estate in the first taker, at a particular time or particular event other than the death of the testator, the contingency adopted, without any words in the will so applying it, will be held referable to the specified time or event at which the interest or possession of the first taker is finally to vest, and the limitation over will not take effect unless the contingency happen before such time or event.

The cases also hold further, that, where the first bequest is in its nature absolute, and where the first taker is the son or heir and main object of the testator's bounty, and where there follows

a limitation over on a dying without leaving issue, a dying without issue in the lifetime of the testator will be intended.

The following authorities are cited as showing the application of the propositions stated above in the first class of cases referred to : 1 Eng. Ch. R., *Thackeray* v. *Hampson ;* 2 Sim. & Stew. 214; 7 Cond. Eng. Ch. R. 238, *Home* v. *Pillan ;* 1 Swanston, 161, *Galland* v. *Leonard ;* 4 Maddock's Ch. 80, *Slade* v. *Milner ;* 4 Ves. R. 160, *Hinkley* v. *Simmons ;* 18 Id. 291, *Ommaney* v. *Beavan ;* 10 Id. 559, *Turner* v. *Moore ;* 8 Id. 12, *Cambridge* v. *Rouse;* 8 Id. 410, *Webster* v. *Hale ;* 28 Penna. R. 62, *Estate of Mary Biddle ;* 4 Halsted's Ch. 272, *Pennington, Exor.,* v. *Van Houten ;* Id. 745, *Van Houten* v. *Pennington, Exor. ;* 1 Exch. R. 91, (1 Price 264,) *Harvey* v. *McLaughlin.* They will be found fully to sustain the principle we have deduced from them.

In illustration of the principle we have announced as maintained in the second class of cases, we select from the above the following : 1 Swanston, 161, *Galland* v. *Leonard.* In this case money was bequeathed in trust, the interest of which was payable to the wife of the testator for life, and, upon her death, the money to be paid and divided to her two daughters, and, in case of the death of them or either of them, leaving a child or children living, the same trust-moneys to be continued out at interest during the minority of such child or children, and in the mean time to apply a competent part of the interest to their maintenance and education, and, on their attaining severally the age of twenty-one years, to divide the same equally among them, the child or children of each daughter to have the share their mother would be entitled to if then living ; and on the ultimate trust that, on the death of the daughters without leaving issue *then living,* also in the event of all their children dying under twenty-one, then to his nephews and nieces. It was held that, on the death of the wife of the testator, the life-tenant, the moneys vested absolutely in the daughters. And thus the limitation over, not only in favor of the children of the daughters, but in favor of the nephews and nieces, though clearly valid in any construction of the contingency on which they depended, were held not to take effect; and although, upon the death of the daughters without issue living, and also on the death of such

children as the daughters might have under twenty-one years of age, by the terms of the will, the nephews and nieces were to take, yet the court held they could only take in the event of all these contingencies happening in the lifetime of the first holder, on the principle that this construction was necessary to make the limitations over consistent with the absolute interest intended to be given to the daughters on their surviving the wife. It was said: "The court must endeavor, offering as little violence as possible to individual parts, to give effect to the whole, and I am satisfied that the two daughters in the actual event [their survivorship of the tenant of the life-estate] are entitled to the absolute property. He intended to give the fund absolutely to the daughters, but then the difficulty to reconcile this gift with the subsequent disposition in favor of their children and his nephews and nieces." "It must be supposed he contemplated two events. If his daughters survived his widow, they should take the absolute interest; but, if they were not then living to enjoy his property, it should pass to their children if they left any, and, if they died without children, to his nephews and nieces. That construction reconciles every part of the will, and makes it one continued disposition of the whole fund. The words evidently import contingency, for, varying the phraseology used in the bequest to his wife, he employs the terms, 'in case of the death,' and it has been properly observed that in other instances when words importing contingency were applied to an inevitable event—as death—they have been understood to denote the occurrence of the event under particular circumstances, as death at a given period in the life of the testator or the tenant for life. The introduction of that qualification required by the expression reconciles and renders sensible the whole disposition, and, in adopting this construction, the court is warranted by many authorities. 2 Strange, 1261, *Lowfield* v. *Stoneham*; 4 Ves. 160, *Hinkley* v. *Simmons*; 6 Id. 557, *Turner* v. *Moore*; 8 Id. 12, *Cambridge* v. *Rouse*."

The principle on which this case was decided was evidently this, that where a limitation over (or to the nephews and nieces) was made to depend on a *real contingency*, (death of the daughters without leaving issue living, and, further, the death of such

children as they might leave under the age of twenty-one,) its generality was restrained so as to require that the contingency should happen under particular circumstances—as during the life of the life-tenant ; and this in order *not to defeat* the previously declared purpose, that on the death of the life-tenant the daughters should have the absolute interest.   It would be impossible to conceive a case more coincident in its features and the principles on which it was decided with the present case.

1 Eng. Ch. 2 Sim. & Stew. 214, *Thackeray* v. *Hampson,* is to the same effect.   This was a bequest to two granddaughters "in trust till they come of age or marry, which shall happen first, the interest to be received in the mean time and paid them; but, if one of them dies before marriage or of age, then to go to the survivor or her child or children; but should they both die *leaving no issue,* I then give them the power to leave it by will as they shall think proper."   One of the granddaughters, Mary Ann Cotton, married the plaintiff, and afterwards died leaving an infant child, one of the defendants.   Elizabeth Mary Cotton, the other plaintiff, long since attained the age of twenty-one. The question was, what interest the granddaughters took.   The vice-chancellor said : "It is impossible to reconcile the different expressions of this codicil, if they are to be literally understood. The testatrix first gives to her granddaughters an absolute interest on their attaining twenty-one or marrying, and if either die under twenty-one and unmarried then her plain intention is, that her share shall go to the other granddaughter if she be living, or, if dead, to any child or children she may have left.   *It is not safe to defeat this* plain expressed intention by a subsequent ambiguous passage.   Both granddaughters having *lived* either to marry or attain twenty-one, both took absolute *vested interests,* and the testatrix *must* have intended by the expression, 'should they both die leaving no issue,' to have *meant a dying without issue before the shares became absolutely vested.*"

Here again the principle is the same ; a real contingency— "*death leaving no issue*"—which is uniformly held to be not too remote in limitations of personal estate, is restrained and *required* to mean a death leaving no issue before the granddaughters attained twenty-one or married, on the principle that to give it the

literal construction would interfere with the plain intention to give an absolute estate to them on those events. It requires no comment to show that the case is in principle identical with this.

1 Exch. R. 97, (1 Price, 264,) *Harvey* v. *McLaughlin*, holds the general doctrine that, in case of a limitation to one for life, remainder to her three children in equal shares, and in case of the death of either of them the share of such so dying to go to their children, means a death of one of the three children of the life-tenant in her lifetime.

4 Halsted's Ch. R. 273 and 745, *Pennington* v. *Van Houten*, is a case identical with this, except in one particular, that there the gift was absolute at the death of the body of the estate, and here the gift is *"when"* the legatee attains twenty-one, which makes the case for us so much stronger, as will be hereafter seen.

There the provision was, "I give, devise, and bequeath all the rest and residue of my estate, real and personal, (except, &c.,) to him and his heirs and assigns forever." The will then proceeds to direct certain real estate to be rented for the benefit of his son, and the proceeds, after deducting expenses, together with his personal estate bequeathed to his son, to be put out at interest for the benefit of his son until " he shall arrive at the age of twenty-one years." " And I do further order that my executors give unto my son, out of my estate, a good college education, and a decent support until he arrives at twenty-one; but if my said son should die, leaving no children, then my will and I do hereby dispose of my property in the following manner." The testator died, leaving his son, an infant, who attained twenty-one years, and afterwards died without children. It was held that the estate vested absolutely at twenty-one, and that the contingency was applicable to a death without children before twenty-one. Such was the decision of the chancellor, (p. 274, 275,) and also of the Court of Errors and Appeals, p. 746 to 750. Amongst other forcible reasons the court says: " The devise was to the testator's only child, an infant of tender years. He was the peculiar object of the testator's bounty. After making suitable provision for his wife, &c., the testator gives the whole residue of his estate, real and personal, to his only child, in fee simple,

by terms the most clear, broad and comprehensive. The general intent, the controlling idea, is to vest the estate of the testator absolutely in his only child. This is the disposition of the estate indicated as clearly by the language of the will as by the voice of nature. There is nothing in the provisions of the will, aside from the particular clause in question, indicating an intent on the part of the testator to limit or in any way to qualify the estate given, after his son should attain twenty-one years of age. And yet, by the construction sought to be given, the whole interest of the devisee in the estate of his father would be the mere use of it for his own life, without the power of aliening the land or disposing of the principal of the personal estate. That the testator should provide for the contingency of his son's death under twenty-one and without issue, was a natural and provident provision to guard against an ordinary contingency. That he should have desired to tie up his entire estate in the hands of his only child, after he attained to manhood, in favor of remote kindred having no special claim upon his estate or his sympathy, seems neither natural nor probable."

Here again the same principle of construing the subsequent clause, even in opposition to its literal meaning, so as to make it consistent with an absolute interest granted to the first taker, prevails, and its application held to be especially necessary to effectuate the interest where the first taker is the son and chief object of testator's bounty.

28 Penna. R. 62, *Estate of Mary Biddle,* was a case where, after the grant of an absolute interest, a limitation over on a "dying without children" was made, and the estate granted in the first instance vested on the death of the testator. In the absence of any other circumstance which the court could lay hold of to limit the general nature of the language employed, it was held that the death of the testatrix herself would be taken in order to prevent a defeat of the clear expressed intention that the only child of the testatrix should have the absolute ownership.

In that case the bequest was: "To my daughter, Ann E. Biddle, *every thing of which I die* possessed," and, after various other provisions, this limitation: "In the event of my daughter's death

without *children,* I give and devise to John B. Biddle, George W. Biddle, and Chapman Biddle, each two thousand dollars." The court held this contingency, "*dying without children,*" to be referable to the death of the testatrix, so as to mean "so dying in the lifetime of the testatrix," on the following reasons: "The first clause plainly gave an absolute estate. Now what is there to reduce it? Very naturally the next thought of the testatrix is, to make other dispositions in the event of her daughter's death without children, *but death when, there is not a word to inform us, and the intention is therefore ambiguous.* How are we to deal with this ambiguity? Consider that the bequest to Ann is absolute, with no word tending directly to show an intention to reduce it to a life-estate or a *conditional fee,* and it is perfectly consistent with this purpose to suppose that the subsequent dispositions were intended to take effect if *Ann should* die before her mother. If the intention of the substitutionary clauses is *uncertain,* in one sense, leaving the estate in Ann absolute, and in the other taking it away, it is mere matter of logic that what is expressly given must stand. The first gift is *absolute,* and the subsequent clauses make no profession of reducing it, and must therefore be taken as intended to provide for its failure to take effect by *Ann's death before her mother.* Besides, Ann is the heir at law, and chief object of bounty, and both these considerations incline us to favor her in the interpretation of the will, and not to allow her portion to be reduced by expressions having an ambiguous reference to it. We cannot suppose the mother intended to subject her daughter to all the inconveniences and abatements that belong to a life-estate, but that she should have an absolute estate if she should survive to take any at all."

7 Cond. Eng. Ch. R. 238, (2 Mylne & Keene, 15,) *Home v. Pillans,* was a case where the testator gave to his nieces the sum of two thousand pounds sterling, each, when and if they attained the age of twenty-one years, "which I give to them free from the debts or control of the husbands, for their and each of their own sole and separate use; *and in case of the death of my said nieces, or either of them, leaving children or a child,* I give and bequeath the share or shares of such of my said nieces or niece so dying unto their or her respective children or child;" and it was held that

William McD. Sims *v.* William Conger et al.

the interest of each of the *nieces* became absolute on attaining twenty-one years.

The court will perceive that this is not the case of *applying words of contingency* to *an event* inevitable in itself, as *death generally,* but to an event *which is as much contingent* in itself (death, leaving a child or children) as the event to which words of contingency are here applied, (death, without lawful issue,) and by it the court, in order to uphold the absolute interest in the first instance granted to the nieces, applied to this contingency the rule universally adopted in the English courts, where words of contingency are applied to an event in itself not contingent, as death, and held that it must be a death leaving a child or children under particular circumstances—*that is,* the contingency was held referable in such case (in the absence of any other circumstance on which the court could fix) to the death of the testator, so as to read a dying *without children,* in his lifetime; but where any other more natural reference could be made, (it being admitted that a reference of the event to a failure of the legatee to survive the testator was strained,) it would be adopted by the courts to restrain the generality of the contingency literally construed, *and thus upon the principle* of making the will consistent with itself by adopting any other construction (not forbidden by the language of the will) than one which involved a reduction or limitation of an absolute interest granted in the first instance; citing many of the cases already cited in this brief.

I quote some portion of the language of the court, but would invite a careful examination of the whole opinion of Lord Brougham, as conclusive in its reasoning and authorities on the present case. "It may thus be stated, as a general proposition, that where the bequest over is in case of the legatee's death, and no other reference *can be made,* the period taken is the life of *he testator; but, where another can be found,* that will be preferred, to avoid *the supposition* of the testator's having contemplated and provided against a lapse; but this is not the only means of restricting the generalty, and the direction that the gift shall vest at a given time affords just as easy and as natural a reference as a preceding life-interest." In illustration of this proposition he puts several cases already incorporated in this brief, among

which is the very case at bar. "A. bequest to A, when and if he attain the age of twenty-one, and, in case of his death, to B, is a gift absolute to A, unless he dies under twenty-one." It is true here the words of contingency refer to a death generally, which is not a *contingent event*, but the court applies the same rule to words which do refer to an event which is contingent—death, "*leaving children.*" Again, he says: "In the present case no period can be derived from any prior estate at the determination of which the gift over is to take effect. But the clause taken together furnishes a period for the restriction at once natural and obvious, and consistent with the plain meaning of the testator, and peculiarly agreeable to the frame of the bequest. He first gives his nieces the money when and if they shall attain the age of twenty-one. At the age of majority, therefore, the legacies vest, and, as far as this *branch of the clause goes, vest absolutely.* He then gives those legacies to their sole and separate use, free from the debts or control of their husbands. Legacies so given to vest at a specified time, and so secured to the objects of the gift exclusively, can only be revoked—for, partially, they are revoked if they are converted into life-interests—can only be so *altered* and retracted *by the most plain and unambiguous and unequivocal proviso;* and the court will, *in dubio, justly prefer that construction of any subsequent clause* which will make it consistent with the intention plainly expressed in the preceding part. "If we read the latter part as contemplating a dying at any time, and as from converting the legatee's interest from an absolute interest in the capital sum into a life-annuity in the event of her leaving a child at her death, we entirely destroy the first part of the clause which provides for the interest vesting at twenty-one. According to this construction, she has attained her age of twenty-one in vain, for, at that period so anxiously pointed out as the time when she was to receive the sum, she only acquires the chance of her will operating on it in case she dies childless. During all the days of her life she has no more control after twenty-one than she had before. It appears quite clear to me that the other construction is a sound one. Having, first, provided for the legacy vesting when the legatee is of age, and secured against the interference of others in the event of

marriage, the testator provides for the case of the legatee dying under age and leaving a child or children ; in that case they take their mother's legacy because she did not live till it vested in her. This seems to be the better restriction to introduce, and more in accordance both with the probable intention and with the authorities, than if we read the words, in case of decease, as referring to the death of the legatees in the lifetime of the testators." " But that the construction adopted below of *death at any time* is inconsistent with all the cases from the earliest downwards, I feel fully assured, and will proceed to show." He then proceeded to cite the authorities, many of which I have already referred to.

It is manifest, from what is quoted above, that, in this case, where words of contingency were applied to an event *in itself contingent,* (death, leaving child,) as much as the event to which the same words of contingency are applied in the case at bar, (death, without lawful issue,) and not to an inevitable and uncontingent event, as death itself, the court would have applied the rule where death alone is the only contingency, and would have restricted it to death in the lifetime of the testator if a more natural and obvious period had not been found—viz., the time when the first legatee was to come into the enjoyment of the testator's bounty under a gift of the absolute interest, namely, when she attained twenty-one years.

I would add one other observation on this case, and the authorities cited. They show the rule to be clearly established that, when death alone is the event referred to by words which import contingency after the gift of an absolute interest, it is always construed, in the absence of some other circumstance to which the court can refer it, to mean death in the lifetime of the testator, which, as said by Lord Brougham, has been termed by one chancellor "unnatural," and another, Lord Hardwicke, has traced the origin of the term "lapse," which describes the event assumed to be contemplated in such cases, to the supposition that the possibility of the legatee dying in his lifetime escaped the observation of the testator.    2 Atk. 372, *Ulritch* v. *Litchfield.*

I ask what is the reason of adopting so strained a construction in such cases but for the controlling reason I am endeavoring to

enforce, that, if not adopted, an absolute inconsistency in the will is the result, in first giving an absolute interest, and then by a subsequent substitutionary clause reducing it to a life-estate or conditional fee—a reason which has ten times its usual force, in a case where, as here, the first absolute gift is to an heir, an only son, and in case of his life not only the paramount but only object of the testator's bounty.

If the position we are endeavoring to enforce needed further fortification it is at hand. A close and irresistible analogy is to be found in the long, and, I believe, unanimous series of English and American cases, in which the rule has been fixed that, in case of a limitation to one and then a subsequent limitation over upon a death of the first taker under twenty-one *or without issue,* the limitation over shall be construed to be dependent on the double event of *dying under twenty-one and* without issue; or, in other words, in such cases the *estate becomes absolute* in the first taker on his attaining twenty.

The principle on which all such cases go is, that to give a literal construction would cut out the issue in the event the first taker died *under twenty-one with issue,* and *as an absolute* estate was given in the first instance to the first taker it could not be supposed that the testator intended to cut out such issue as he *might* have, if he died before twenty-one, when he did not cut out such as might be born after that age, and, therefore, to give full force to absolute gift in the first instance and the presumed intention in favor of issue, and not to alter or qualify the nature of the gift first made except in a case where the subsequent clauses imperatively required it, absolute violence was done words "dying under twenty-one *or* without issue," which were construed to mean "dying under twenty-one and without issue." See 1 Jarm. on Wills, 422, 423, 426, 427; 2 Mason R. 208, *Arnold* v. *Buffum;* 1 Yeates, 411, *Cheesman* v. *Wilts;* 13 S. & R. 205, *Walsh* v. *Elliott;* 2 Binney, 544, 545, *Lessee of Hover* v. *Hertz;* 2 Bos. & Pull. (U. S.) 38, *Fairfield* v. *Morgan;* 3 Atk. 193, *Barker* v. *Sureties;* 8 How. (U. S.) 263.

So far has this rule of construction been carried that in case of an *absolute* gift to one, (a grandson,) but in case he dies before he attains the age of twenty-one years *or* marriage and without

issue, then over, the estate was held absolute at twenty-one, and to have been only defeasible in case the .deceased died under twenty-one, *unmarried,* and without issue. 2 Strange, 1165, *Barker* v. *Sureties.*

The principle of these cases clearly requires the construction of this will which we contend for.

In the cases we have cited above, and especially in the case from 7 Cond. Eng. Ch. R. 238, the fact of the estate of the first taker *vesting* at a particular time is taken as an indication of the time before which the subsequent contingency is to happen. It is manifest from all the cases that the fact of a legal vesting of the interest is not essential to the principle they establish, and that the rule they go upon would be and is equally applicable if the estate or interest were a vested one *eo instanti* the death of testator, and the enjoyment of it only postponed; or, in other words, they take the time when the absolute and complete ownership in interest and possession, with power of disposition *intervivos* and by will, falls upon the devisee as the time before which the contingency must happen. This is clear, from the fact that, if no such period is fixed in the will, the courts have made it by adopting the death of the testator as the time by which the generalty may be restrained. It is also clear from the fact that, in two of the cases we have cited—being, *Thackeray* v. *Hampson,* 1 Eng. Ch. R. 214, and *Van Houten* v. *Pennington,* 4 Halsted Ch. 745—the interest granted to the first takers would probably under the principles of law be called vested estates *at the death* of the testator, yet, as the absolute ownership and possession were not to take place until the age of twenty-one years, that period was adopted for restricting the time within which the contingency might occur.

But it is, we think, clear, on principle and authority, here, that the interest given to Allison Wade Sims was to *vest* at twenty-one. The rule is clearly laid down in the authorities. 2 Williams on Exors., lib. ed. 773, 774; 5th Am. ed. 1100, *et seq.* "A bequest *payable* or *to be paid* at or when the legatee shall attain twenty-one years, or any other determinate period, confers a *vested interest.*" "But, if the words, 'payable,' or 'to be paid,' be omitted, and the legacies are 'at twenty-one,' or 'if,'

'when,' 'in case,' or 'provided,' 'the legatees attain twenty-one' or any other future definite period, *these expressions* annex the time to the substance of the legacy, and make it contingent." " The exception to the last rule is in case of a grant of the intermediate interest, but it must be of the whole interest, and if it be of maintenance it must be coextensive with the whole interest." 2 Williams, lib. ed. 774, 775; new ed. 1110, 1111. " If the gift of maintenance be not coextensive with the whole interest, or if it be out of another fund, in neither case will the legacies vest prior to the period when they are made payable; for such provision affords no presumption that the testator intended the legacies to vest before they became due." Id.

1 McMullan, 201, *Seabrook* v. *Seabrook.* Property to be kept together until oldest child comes of age, then divided into four parts, (the number of children,) and one to be delivered to each of the children as he comes of age; the children to have a reasonable maintenance and education out of the income, and the residue of the income to fall into the residue. The property was held not to vest until they came of age. See, particularly, opinion of the chancellor, p. 209–211.

See also 6 Porter, 507, *Marr* v. *McCullough;* 1 Iredell Ch. R. 55, *Anderson* v. *Felton.* A testator gave his manor plantation to his son, and two other plantations to his four daughters, and provided that all the lands should be rented and the negroes hired out until his youngest daughter became fifteen years old, and that his children should be educated and boarded out of his estate; and added: " I likewise provide that at the time my youngest daughter, S. T., arrives at the age of fifteen years, all my negroes, money, and personal estate shall be divided among my children." It was held the legacies were not vested, but contingent on their living to the period when the youngest daughter would have attained fifteen years of age, citing 6 Ves. 239, *Harrison* v. *Graham.*

In the latter case it is held that the word, "when," made a legacy vested, but the interest being required as often as the same became due, should be loaned out for the benefit of the legatees till they should attain twenty-one, and to and for no other use, intent, or purpose; it was held that the legacy vested,

because all the interest *as it fell due* became the property of the legatees, as separate altogether from the residue.    6 Ves. 242,₂ *Harrison* v. *Graham.*

The cause having been decided against appellees, their counsel, *H. T. Ellett* and *Jno. B. Colman,* presented the following petition for a reargument :

In March, 1851, A. W. Sims attained the age of twenty-one years, and received possession of his property ; and he died unmarried and without issue in October, 1858.

The bill was filed in the Chancery Court of Claiborne county by the ulterior devisees, against the appellant, to recover certain slaves, under the limitations contained in items six and seven of the will.

The Chancery Court overruled a demurrer to the bill, and the defendant appealed to this court.

In the argument, it was expressly admitted by appellant's counsel that no question could arise as to the validity of the devise, as an *executory devise ;* but it was insisted that when, in item seventh, the testatrix spoke of her son dying " without lawful issue," she intended not a dying without issue *at any time,* but *under the age of twenty one years.*

This court has pronounced that to be the true construction of the will.

That opinion we respectfully ask the court to reconsider.

In the opinion, the question is stated to be, what construction is to be given to the words, " die without lawful issue," and the limitation over thereupon, in the seventh clause of the will.    It is assumed that these are words of doubtful and ambiguous import, and the counsel of the appellant have referred the court · to certain English cases, and one from New Jersey and another from Pennsylvania, as furnishing a rule to guide in their interpretation.

It is one of the cardinal rules of the construction of such instruments that, " where a testator uses technical words, he is presumed to employ them in their legal sense, unless the context *clearly* indicate the contrary."    2 Jarm. on Wills, 744, 17th rule.

*A fortiori,* where words have a fixed and definite meaning imputed to them by statute, they are not open to construction, but must be held to have the meaning assigned by the law. It is submitted, that such is the case with the words now before us. The 26th section of the Statute of Conveyances, Hutchinson's Code, 610, expressly provides that "*Every.* contingent limitation in any deed or will, made to depend upon the dying of any person without heirs, or heirs of the body, or without issue or issue of the body, or without children, or offspring, or descendant, or other relative, *shall be held and interpreted* a limitation to take effect *when such person shall die,* not having such heir, or issue, or child, or offspring, or descendant, or other relative, (as the case may be,) *living at the time of his death,* or born to him within ten months thereafter, unless the intention of such limitation be otherwise *expressly* and *as plainly* declared on the face of the deed or will creating it."

Now here is "a contingent limitation made to depend upon the dying of" A. W. Sims "without issue." He has died without issue. The court is asked to hold that they mean, not a dying without issue "*at the time of his death,*" but a dying without issue at some day long anterior to that event. Is not this to fly directly in the face of the statute, and to open the door to all the uncertainties and embarrassments which have existed in courts governed by the common law in interpreting such language?

But this is not all. The words here employed are technical words, which for ages have had in our jurisprudence a fixed signification, which they must by the rule be held to bear, unless the contrary *clearly* appear.

If an estate be given to A and his heirs, or to A and his heirs forever, with the restrictive words, " but if he die without heirs of his body or without issue, then to B," such language has been uniformly held to give to A an estate tail.

See the cases collected in 2 Jarm. on Wills, 237; 4 Kent's Com. 274; 6 Cruise's Dig. title Devise, chap. 12, from sec. 7 to sec. 32, p. 290–301.

At page 295, sec. 17, the last named author gives the case of *Doe* v. *Rivers,* 7 T. R. 276, identical in principle with the present. The testator, confirming a settlement whereby one

part of the estate was limited to his wife for life, devised the rest of the premises to his daughter and only child Mary, *on her attaining twenty-one*, and to her heirs. The part settled on his wife he devised to his daughter at her death. In case the widow should die before the daughter attained twenty-one, then he willed that both parts of the estate should go immediately to his daughter and *her heirs forever;* but he willed that his wife should hold and enjoy both parts until his daughter should attain the age of twenty-one; and, *in case his daughter should die without issue*, then he empowered her to dispose of the whole by will or any other instrument in writing; and, for want of such issue and direction, then that the same should descend and go to his own right heirs.

The court was of opinion that the daughter took only an estate tail; and Burrough, the counsel, afterwards a distinguished judge of the Common Pleas, candidly acknowledged that he could not attempt to maintain the contrary.

The case of *Maurice* v. *Graham*, 8 Paige C. R. 483, is likewise identical in principle, and also in the facts, with the present one.

W. Turpin devised to Juda Jackson and Edward Butler, their heirs and assigns, forever, "*provided* they both live to the age of twenty-one years, or to the survivor, if only one should live to attain that age." "If Juda and Edward both die, leaving no child or children, in that case, I give, &c., to Lucy Bates."

Chancellor Walsworth says: "The testator appears to have contemplated two events, upon the happening of which the devise in fee to Juda and Edward as tenants in common was to be defeated, either wholly or in part: *first*, the death of one of them before both had arrived at the age of twenty-one, and in that event the estate is given to the survivor; *secondly*, the death of both without children, *either before or after they arrive at the age of twenty-one*, in which event he devises the whole lot to Lucy Bates and her heirs in fee.

"I can see no objection whatever to the validity of this devise over to Lucy Bates in fee, upon the happening of the contingency contemplated by the testator. It is the ordinary case of an executory devise of the whole property in fee simple, limited

upon a determinable estate in fee in the event of the death of the first takers without leaving children. Even if the word children in this devise should be construed to mean issue, so as to include more remote descendants, still it would not mean an indefinite failure of issue, so as to give an estate tail to the first takers; for the Revised Statutes declare that a limitation over upon the death of the first taker without issue shall be construed to mean issue living at the time of his death."

The only difference between this case and the one at bar is, that in the one the contingency is the death of *two persons* without issue, while in the other it is the death of *one* without issue.

*Rancel* v. *Cresswell*, 30 Penna. R. 158, is also strongly in point:

"My will is, that when the proceeds of the above-mentioned land shall have amounted to two thousand dollars, then my son Samuel Cresswell shall have the farm, &c. If my son Samuel Cresswell shall have lawful issue, then the said property to go to said lawful issue at his decease; but if he should die without lawful issue, then the said property to be equally divided among my surviving children." Held to create an estate tail in Samuel Cresswell.

Here was an absolute devise to the son, which was not to vest until the proceeds of the property after the testator's death should have amounted to two thousand dollars; and there was a devise over "*if he should die without lawful issue.*" The facts are not distinguishable from those in the present case, arising under the will of Phebe A. Kenley.

A testator devised as follows: "I give to my son T. N. all my house and lot situate in Spruce street, Philadelphia, *as soon as he shall arrive at the age of twenty-one years,* him and his lawful heirs forever; and in case of his death, *without lawful issue,* then said house and lot to be sold to the best advantage, and the amount thereof equally divided among my surviving children." Held that T. N. took an estate tail. *Sharp* v. *Thompson,* 1 Wharton, 139.

But why consult these authorities, when the rule has been so recently recognized and established in the great case of *Jordan* v. *Roach,* 32 Miss. R. 604. Roach's will directed that Mary, his daughter, on *coming of age, or her marriage,* was to have

one thousand five hundred acres of land, and to have purchased for her thirty negroes and stock, &c. (Of course there was no vesting till that time, for the property was to be afterwards purchased.) The limitation was to her and *her heirs forever*, but, should she die *without issue*, then over.

The chief justice said: "It is not to be controverted that Mrs. Jordan did not take an estate in fee simple," but, as he subsequently shows, she took what would have been, at the common law, in lands a fee tail, but, under our statute, a fee determinable on the contingency specified.

And at page 608 he says that, under the operation of the statute, "she took an estate in fee, subject to be determined" (not by her death without issue before marriage or her majority, the time when her estate was to vest, or, at least, come into possession, but subject to be determined) by the event of her death without issue *then living.*

But the case of *Gray* v. *Bridgeforth*, 38 Miss. R. 312, is perfectly conclusive of the question. It is identical with the present one, and was decided on the law of Tennessee, *without the advantages of our statute which has been referred to.*

The devise was, to each and every one of several children *when* they came of age or married, one horse, bridle and saddle, one bed and furniture, and fifteen hundred dollars in money. Then came an item fifth: "It is my will that if any of my children named in the second item of this my last will and testament *shall die without heirs*, then," &c., and the executory devise was held good; which it could not have been if the estate vested absolutely when the devisees became of age.

Is it not asking too much of the court, when the appellant invokes them to overrule this long list of cases; for, if they decide that the estate given to A. W. Sims, by the third clause of his mother's will, could not be restricted by the words of the seventh —"if he should die without issue"—it must inevitably follow that the long line of English decisions, as well as two solemn determinations of this court lately made, were erroneous. If so, and they are to be set at naught, and technical words having a settled meaning at the common law, as well as a fixed construction attached to them by our statute, are to receive a shifting

interpretation, as different conjectures of intention may prevail with the minds of different judges, we may well fear that titles in Mississippi will be shaken to their very foundation.

But if it were possible that we are mistaken in all this, there remains to be presented another view, the bare suggestion of which will, it is confidently hoped, secure to the case a further consideration.

The court has decided that A. W. Sims, upon the true construction of the will, took no *vested estate* until he attained his majority. In other words, that his estate, by force of the word "when" in the third clause, remained contingent until he reached his full age. This forms the foundation of the whole argument on which the construction given to the will is rested. For, it is said, as he took nothing until he arrived at full age, "if he married and had lawful issue, and died before that time, his children would be deprived of all benefit of the estate," and the court goes on to say : "hence it is most just and natural that she should make provision against such a result, which must have been altogether contrary to her intentions; and this furnishes the true interpretation of the provision in the seventh clause, that if her son should 'die without lawful issue' *before* the estate vested in him under the fourth clause, the property should go over to his collateral relations."

Now let us put the two clauses together, as interpreted by the court, with the words assumed to be necessary interpolated, and observe the result. The reading will be as follows : " When my son A. W. Sims arrives at the age of twenty-one years, I give and bequeath to him all my estate, real and personal; and it is my desire and will that should my said son A. W. Sims die without lawful issue before he attains his age of twenty-one, all such property, &c., shall go over to my collateral kindred."

Let us suppose, such being the will, that Sims had died under twenty-one, leaving issue: how would they have taken? Certainly they could not have taken in his lifetime, because, by the terms employed, they were to have the estate only after his death, as his "*issue*," that is, heirs of his body. But how possibly could they take as his heirs, unless he had some estate which could pass to them by inheritance ? But by the assumption, which is

the basis of the argument; he had no estate during his minority, and could have none unless he attained his full age, by force of the words, " *when* he arrives at the age of twenty-one years."

In the case supposed, the effect of these words would have to be avoided by construction, in order to admit the *issue* to take the estate. And it is absolutely certain, upon the authorities, that had the will been framed as the court supposes to have been the intention of the testatrix, A. W. Sims would have taken under it *eo instanti* his mother died. 1 Jarm. on Wills, 738, 739.

See the cases cited from Levinz, East, and Simons, and other reporters.

In *Edwards* v. *Hammond*, 3 Levinz, 132, A surrendered the reversion in fee in customary lands to the use of himself for life, and after his decease to the use of his son H. and his heirs and assigns forever, *if it should happen that he should live until he attain the age of twenty-one years;* provided that if H. died *before he attained that age* then, &c.; H. was held to take a fee.

So, in *Doe* v. *Moore*, 14 East, 601, the devise was to M. *when he attained the age of twenty-one years, but in case he shall die before he attains the age of twenty-one years* then over; the estate was held to vest immediately.

So, also, in the case of *Phipps* v. *Williams*, 5 Simons, 44, and others cited by Jarman.

Thus, it will be perceived that when words are inserted in this will, the interpolation of which is assumed to be required, construction it is found *must* be resorted to *to get rid of the very words* which are supposed to make the interpolation necessary.

Must not the argument be fallacious which assumes as the basis of construction, as a premiss, that A. W. Sims' estate did not *vest* until he reached the age of twenty-one years, and, in order to meet a supposed difficulty arising *from that fact*, requires certain words to be supplied, *which words, when inserted*, prove to a moral certainty *that the premiss is untrue*, and that *the estate did vest* the instant that his mother died ?

By the construction, clearly the court strikes out of the will the very words on which the whole argument is built, and it is made demonstrably clear that A. W. Sims took a fee *before arriving at his majority*.

William McD. Sims *v.* William Conger et al.

But, without supplying any words, taking the will with its unaided expressions, must it not be held *that he did take a vested interest at his mother's death?*

Let it be remembered that he was the son and only heir of the testatrix; bearing that in mind, the question is, if the testatrix intended that he should take no estate but upon the contingency of his living to be twenty-one years old, what disposition did she make of the estate in the interval that might elapse between her death and his attaining his majority? She must be supposed to have intended such disposition, for ignorance of the fact that the law would otherwise cast the descent upon him cannot be imputed to her, and so her purpose be defeated.

Mr. Jarman, 1 vol. p. 488, tells us, what is an obvious suggestion to the mind, that "it is impossible to suppose that the testator could intend to make a devise, to take effect at a future period, to the very person who would, in the absence of disposition, take the property by act of law, without intending that it should, in the mean time, devolve to some other person."

To whom, then, was the intermediate interest given in the interval between the death of the testatrix and the time fixed for the son's interest to come into possession? By the third clause of the will, her executor was to have possession of the plantation, to make cotton, corn, &c., until her son reached twenty-one years of age. By a necessary implication, the executor must be held to have taken that partial interest, for the reason that there was no other person mentioned who possibly could take. If so, there was then a partial interest carved out of the fee for the executor, with a remainder to the son. Upon that construction, the son, by the authorities, clearly took a vested estate in remainder, at his mother's death. 1 Jarm. on Wills, 734, and cases cited.

This is distinctly admitted in the opinion delivered in this case, and is too clear to admit of doubt.

But is it necessary to resort to any such construction? Fairly considered, does not the whole will indicate with sufficient clearness the purpose that the son's interest should begin with his mother's death? Not only does she not in distinct terms give the intermediate estate to any one else, but certainly every

prompting of maternal affection and duty would have urged her rather to provide for him during the tender years of childhood than when he had grown to be a man.

But in the fifth clause of the will she expresses the wish (and she reiterates it in the twelfth and last clause) that her son shall select her executor to be his guardian, "and that the plantation [which by the fourth clause she had devised to her son] shall be carried on by him, as my executor and *his guardian*, until my son arrives at the age of twenty-one years."

What other meaning can this have but that the executor should retain possession of the property so long as might be necessary to execute the trusts of the will, by the payment of debts and legacies, and then should hold it as her son's guardian, during the remaining years of his minority?

But how hold it "as his guardian," unless the son had a present interest in the property? It is respectfully submitted that, fairly considered, there is enough shown upon the face of the will, coupled with the other considerations referred to, to control the word "when" in the fourth clause, and to show that a beneficial interest rested on him instantly upon his mother's death. His age of twenty-one years was then merely the time appointed for his coming into possession. *Scott* v. *James*, 3 How. 307, 312, 313; *Wade* v. *Grimes*, 7 How. 425, 432, 433; *Doe* v. *Ewart*, 34 Eng. C. L. R. 200, 201.

If it appear, from any expression or direction contained in the will, or if it can fairly be deduced from the entire instrument, that the intention of the testator was that the legacy should vest immediately, such intention shall prevail. *Gifford* v. *Thorn*, 1 Stockton N. J. 708; *Letchford's Appeal*, 30 Penna. R. 175.

If this be not so, then the other construction must be the true one, that, by necessary implication, a partial interest was given to the executor, with a remainder to the son, expectant upon his attaining his majority.

In either aspect of the case, then, A. W. Sims took at his mother's death a vested fee, determinable on his dying "without issue," and by an unbroken current of authorities the executory devise over is good. And it must be abundantly apparent that

if A. W. Sims took under his mother's will an instantly vested fee, any "issue" of his who might have survived him had he died during his minority would have taken the devised estate by inheritance. And on the other hand it is equally clear that if his estate was really one contingent upon his attaining his majority, no "issue" of his could have taken had he died in infancy, for the simple reason that he could have had no estate which would have been the subject of in-heritance. But if the construction be the true one that his estate was contingent, then, having reached his age of twenty-one years, and having died "without issue," the ulterior devise must be sustained.

We submit, however, that it is much more reasonable to hold that the devise vested at the death of the testatrix, and that she intended the issue of her son to take in all events, if he left any, than by an artificial construction, made after the event has happened, to defeat her plainly expressed intentions in favor of her own blood, and give the estate to the next of kin of her son, who may be relatives on his father's side, and whom she with equal clearness showed her determination to exclude.

It is respectfully urged that the cases, upon the authority of which this cause was decided, are not applicable to it. There are two large classes of cases in the books, commencing with the earliest and coming down to the latest times, relating to limitations of estates in real and personal property after the death of the first taker. They never appear to have run into each other, but, like parallel lines, may be prolonged indefinitely, without the slightest danger of collision. The one class relates to limitations upon the death of the first taker *without issue;* and the other class relates to limitations upon *the death of the first taker simply*, without any collateral circumstances to qualify it.

Limitations of the first class, as we have shown, have always been held to be valid, and to create an estate tail in the first taker, or a fee determinable, whenever the death without issue should occur, according as the language in each case has been held to import an indefinite or a definite failure of issue. And to this rule it is believed there has been no exception.

Cases of the other class, to wit, where the limitation is upon

the death of the first taker simply, have received a different construction.   When an estate is given to A and in case of his death to B, though in form it is a limitation upon a contingency, yet it is not so in fact, but is treated by the courts as a " *substitutionary gift*," or an " *alternative disposition*," by which names it is indifferently called.   Language importing contingency being applied to a certain and inevitable event, to wit, *death*, which is not at all contingent, it becomes necessary for the court to determine by construction what contingency the testator meant, and to refer the event—death—to some collateral circumstance which will make it contingent.   Accordingly the courts have adopted the rule, that in such cases the testator will be presumed to have meant death before the time when the estate is to vest in the first taker, whether that be at the death of the testator or at some other time appointed by the will; and that if the first taker survive the testator, or live until the period when the interest is to become vested, it shall vest in him *absolutely*, and the substituted gift shall be cut off entirely.

" The difficulty in these cases," says Powell, " arises from the testator having applied terms of contingency to a certain inevitable event, (for such death, at some period, obviously is,) and which renders it necessary either to read them as referring to the event of death whenever it shall happen, by which it is evident rather a strained construction would be given to the testator's words, or, which is the alternative adopted, to construe the expression as referring to death under some circumstances in association with which it is contingent.   That circumstance is naturally the time of its happening; and that time, when the bequest is immediate, necessarily is the death of the testator, there being no other period to which the words can be referred." 2 Powell on Devises, chap. 37, p. 758; see, also, 2 Jarm. on Wills, 659, chap. 68; note *a* to *Lord Douglas* v. *Chalmer*, 2 Ves. Jr. 501, (Sumner's ed.;) Edin's note *a*, *Billings* v. *Sandom*, 1 Bro. Ch. C. 393.

Sir William Grant says: " The expression itself is inaccurate, as it applies words of contingency to an event which is certain. No man can with propriety speak of death as a contingent event which may or may not happen.   When therefore a testator so

expresses himself, the question is, what he means by that inaccurate expression. *He may have had some contingency in his mind."* *Cambridge* v. *Rouse,* 8 Ves. Jr. 21.

And in *Webster* v. *Hale,* 8 Ves. 413, the same eminent judge says: "The difficulty in all such cases is to ascertain what the testator intended by applying words of contingency to an event that is certain. The words, taken literally, imply doubt as to an event of which no doubt can be entertained. A construction, therefore, is absolutely necessary."

So, Lord Brougham, in *Home* v. *Pillans,* says: "There can be no question that a bequest to any person, and in case of his death to another, is an absolute gift to the first legatee, if he survives the testator; and this, whatever be the form of expression, as 'if he die,' 'should he happen to die,' 'in case death should happen to him,' and so forth. The event here contemplated being so inevitable that it cannot be considered a contingency, the courts have held that something else must be intended than merely to provide for the case of the legatee dying at some time or other; and have said that they will rather suppose the testator to have contemplated and provided for the case of the legatee dying in his own lifetime, &c. 2 Mylne & Keene, 20.

Now, *dying without issue* is not an inevitable event, but is necessarily contingent. The contingency in the mind of the testator is plainly expressed, and hence such words do not require or admit of construction, further than they have been construed by our statute, in respect to the time when the failure of issue is to take place.

And therefore Powell, after reviewing the cases, uses the following significant language: "It may be remarked, too, that the rule under consideration, which construes expressions providing for death as a contingent event as confined to its happening in the lifetime of the testator, does not apply where it is expressly coupled with any circumstance which renders it contingent, as in case of the death of A without children, or under twenty-one, or *if he die without issue,* for, *cessante ratione lex cessat.* The devise over, therefore, takes effect at the happening of the event *at any period."* 2 Powell on Devises, 764, 765.

The following authorities on which the doctrine of construction

in question rests are all cases where the limitation over was upon the contingency, "if he die," "in case of his death," "should he happen to die," and the like, without any circumstance being associated with the event that could make it contingent. *Lowfield* v. *Stoneham*, 2 Strange, 1261; *Trotter* v. *Williams*, Prec. Ch. 78, 2 Eq. Ab. 344; *Hinkley* v. *Simmons*, 4 Vesey, 160; *King* v. *Taylor*, 5 Vesey, 806; *Turner* v. *Moore*, 6 Vesey, 557; *Cambridge* v. *Rouse*, 8 Vesey, 12; *Webster* v. *Hale*, 8 Vesey, 410; *Ommaney* v. *Beavan*, 18 Vesey, 291; *Wright* v. *Stephens*, 4 Barn. & Ald. 574; 6 Eng. C. L. R. 520; *Slade* v. *Milner*, 4 Madd. Ch. 144; *Harvey* v. *McLaughlin*, 1 Price Exch. 264; *Origan* v. *Baines*, 7 Sim. 40; *Clarke* v. *Gould*, 7 Sim. 197; *Billings* v. *Sandom*, 1 Bro. Ch. C. 393, and *Nowlan* v. *Nelligan*, Id. 489, decided by Lord Thurlow, and *Lord Douglas* v. *Chalmer*, 2 Vesey, Jr., 501, decided by Lord Loughborough, were cases of precisely the same description, but received a determination different from the other cases.

None of the above cases were cited on the argument of this cause; but others, which professedly were decided upon the authority of these cases, and which assume to do no more than to assert and apply the same doctrine, were cited and relied on as establishing the proposition that, in a case like the present, where the limitation over is upon a *dying without issue living at the death*, the same rule applies, and that, if the first taker lives until the time appointed for the estate to vest, it vests *absolutely*, and all the ulterior limitations are defeated.

It was distinctly admitted in the argument at the bar by the counsel for the appellant that it made no difference in the application of the rule, whether the estate vested at the death of the testator or at any other time. If the gift is immediate, and vests at the death of the testator, or if the vesting is postponed until the devisee attains the age of twenty-one, or until any other period, if the devisee lives until the estate vests in him, it vests absolutely. Nor could any such distinction be successfully drawn, for the doctrine is so put expressly by Lord Brougham, in *Home* v. *Pillans;* and all the cases show that it is to the period when the estate vests that the contingency of the death is to be referred, whenever the rule is applied.

Before remarking particularly upon the authorities relied on, the attention of the court is respectfully asked to one consequence that must follow if the appellant is correct. Certainly if the devisee dies before the estate vests in him, the devise by the common law would lapse, and so it would now in this State, unless the devisee was a child or descendant of the testator. If, then, when the estate vests, it vests *absolutely*, it must inevitably follow that the vast multitude of cases in England and America, in which it has been held that a limitation over, after words that would create a fee simple made to depend upon an indefinite failure of issue, cuts down the fee to an estate tail, and that a similar limitation upon a definite failure of issue creates a fee determinable by the death of the party, *at any time*, without such issue living at his death, have all been erroneously decided; and that there never was a case in any court, out of which the abstruse learning contained in our law books, in regard to the validity of these limitations, could have arisen, unless there was in it a *fixed period of time* at which the death should occur.

A conclusion like this, it is believed, will not be readily admitted by the court.

This other consequence must also follow, as a necessary corollary, to wit, that a devise to A, to vest at the testator's death, and if he die under age, and without issue, then over to B, would vest absolutely in A in case he survived the testator, and would never go over to B, although A might afterwards die under age and without issue. Yet the contrary has been held in such a case by respectable courts, and there can hardly be a doubt that A's estate would be defeated on the happening of the contingency. *Wilson* v. *Frier*, 2 Hill's Ch. 550; *Ray* v. *Enslin*, 2 Mass. 554; *Right* v. *Day*, 16 East, 67; *Doe* v. *Brabant*, 4, 1 T. R. 706.

The authorities relied on are *Thackeray* v. *Hampson*, *Galland* v. *Leonard*, *Harvey* v. *McLaughlin*, *Home* v. *Pillans*, *Mary Biddle's case*, and *Van Houten* v. *Pennington*.

If any of these cases shall be found to have carried the doctrine further than the reason of it requires or allows, it will obviously be better to return to the reasonable limits of the rule than to follow a path that leads to error.

It may first be remarked that in three of the cases—to wit, *Thackeray* v. *Hampson*, *Harvey* v. *McLaughlin*, and *Home* v. *Pillans*, there was *no limitation over on the failure of issue*, and therefore nothing to bring the cases within the principles which, as we conceive, control the present one.

*Thackeray* v. *Hampson*, 2 Sim. & Stew. 214, 1 Eng. Ch. R., was a case of a devise to two granddaughters, to be paid when they come of age or marry, which shall first happen, the interest in the mean time to be paid to them; "if one of them die before marriage or of age, then to go to survivor or her children; but should they both die leaving no issue, I then give them the power to leave it by will, as they shall think proper, being well assured they will do what is right." One of the granddaughters married, and died leaving a child, and the other attained the age of twenty-one; and the question was, What estate did they take? By the first clause, an absolute estate was granted. That estate was not qualified by the last clause, for that did not profess to diminish the interest, or to give over the estate to any other person. It only provides that if both die without issue, they shall have power to make a will. That power they possessed, if of proper age and capacity, independent of this will, and, if they did not, the will could not confer it. Suppose that, after arriving at age or marriage, the devisees had both died without issue, and without having made a will, where would the estate have gone? The first clause having given an absolute estate, and there being no gift over, nobody but the heirs at law of the devisees could have taken. If there was any doubt whether the first clause conferred an absolute estate, the last clause giving power to dispose of it by will, would have been sufficient to carry such an interest. *Robinson* v. *Dusgale*, 2 Vernon, 181.

Besides, the language of the will plainly imported that if one died before twenty-one, or marriage, her share should go to the survivor, as a "substitutionary gift;" but neither did so die. It was not safe, in the language of the judge, to defeat this plainly expressed intention by the subsequent ambiguous language, "but should they *both* die leaving no issue." They had not *both* died, for Elizabeth M. Cotton was still alive.

*Harvey* v. *McLaughlin*, 1 Price, 204, 1 Excheq. 91, was a case

of limitation to one for life, remainder to her three children in equal shares; and, in case of the death of either of the children, the share of the one so dying to go to his children. And it was evidently right to hold that, if the three children survived the tenant for life, the estate vested in them absolutely.

That no difference whatever is made by the circumstance of the legatees over being the children of the first taker is equally beyond dispute. Per Lord Brougham, *Home* v. *Pillans*, 2 Mylne & Keene, 22, 7 Eng. Ch. R. 238.

*Home* v. *Pillans*, 2 Mylne & Keene, 15, 7 Eng. Ch. R. 238, was a case of a bequest to two nieces, when and if they should attain their ages of twenty-one years, and in case of the death of said nieces or either of them leaving children or a child, then the share of the niece so dying to go to her children. There was no gift over on the failure of issue, and the only question was, whether the testator intended to give his nieces estates for life only, with remainder to their children, or whether he intended an alternative or substitutionary gift to the children in the case of the death of either of the nieces before the estate vested in them. It is plain that the words, " leaving children or a child," do not affect the sense of the clause; but it would mean the same if these words were omitted, to wit, "I give to my nieces, &c., and in case of the death of either of them, I give the share of the one dying to her children." The fact that the alternative gift is to children makes "*no difference whatever;*" and therefore the clause has the same effect as if it had been, "I give to my niece, and in case of her death I give her share over to B," the true construction of which would no doubt be, that if the niece lived until the estate vested she would take absolutely.

The case furnishes no countenance for the doctrine that when the limitation is upon the failure of issue, the estate will vest absolutely in the first taker; but, on the contrary, Lord Brougham treats it throughout as a case of a limitation upon *death simply,* without any other circumstance of contingency, and applies to it the rule of construction, by which the event of death is referred to some collateral condition that will make it contingent. The case is expressly decided on the authority of *Lowfield* v. *Stoneham, Cambridge* v. *Rouse,* and other cases; and his lordship takes

pains to express his approbation of the "powerful view which Sir William Grant takes in his luminous judgment" in *Cambridge* v. *Rouse.*

Jarman says this case of *Home* v. *Pillans* was decided upon this principle, (2 Jarm. 665;) and in a later part of the work (page 695) he evidently shows that in his opinion the decision was erroneous; and he remarks that Lord Brougham "very faintly adverts to the fact that, in the class of cases on which he relies as authority, the gift was *in case of death, simpliciter,* and in the will before him it was a case of death *in connection with a collateral event,* (i. e., leaving children,) which forms a most material distinction."

The case of *Galland* v. *Leonard,* 1 Swanst. 161, is cited and explained by Jarman, 2d vol. 694. A testator gave the residue of his personal estate to trustees, upon trust to pay the interest to the wife for life, and to pay her an annuity, *and upon her death to pay and divide* the trust-moneys unto and equally between his two daughters H. and A., *and in case of the death of them, his said daughters, or either of them, leaving a child or children living,* upon trust for the children; the children of each to be entitled to the same share his, her, or their mother would be entitled to *if then living.* And in trust, in case the daughters should die without leaving issue, or in case their children should die under twenty-one, then for certain nephews and nieces.

Mr. Jarman says the frame and terms of the bequest showed that the testator contemplated the death of the widow as the period of distribution. He could not have intended that the children of the daughters should take after them in remainder, because the children were to take the share which their mother, *if living,* would have taken; which of necessity imported that the daughters, if living at the time of distribution, should take the absolute fee which otherwise their children were to take.

That being so, no question arose as to the validity of the devise over to the nephews and nieces, because they were only to take on a second contingency, and the first had not occurred.

Sir Thomas Plumer also put the case partly upon the ground, that the words, "*in case of the death of the daughters,*" &c., implied a doubt *whether they could ever die,* and as being within the

authorities which hold that "where words importing contingency are applied to an *inevitable event,* as *death,* they have been understood to denote the occurrence of the event under particular circumstances, as death at a particular period, in the lifetime of the testator, or tenant for life," &c.

Plainly the case depended upon its peculiar circumstances. Indeed the latter limitation in favor of the nephews and nieces does not seem to have been regarded as affecting the decision at all; and Jarman, in stating the case, in 2 Jarm. 694, and Lord Brougham, in quoting it, in *Home* v. *Pillans,* (page 23,) do not mention this ultimate trust as a part of the case; but treat it as having depended entirely upon the prior clause, limiting the estate to the children on the death of their parent. Lord Brougham says the clause is to be read, "in case of their death during the lifetime of the first taker."

In closing this review of the English cases relied on by the appellant we would remark:

1st. That not one of them presents the naked case of a gift to one and the effect of a devise over in the event of his dying without issue.

2d. That the effort was in each to reduce a fee imported by general words of gift to an *estate for life;* whereas our case proceeds upon the supposition that A. W. Sims took *a fee,* determinable it is true, but of that sort which is the subject of dower and curtesy, and also of a devise by will, in case the contingency does not happen.

3d. That they are cases of pecuniary legacies, respecting which the English chancery has built up so refined and artificial a system—of legacies, too, payable at a distant day, and then for the first time to be severed from the estate of the testator; whereas here the devise is by a single clause, of the whole body of the estate, real and personal; and

Lastly, we invite especial attention to these cases and others belonging to the same class, as collated and commented on by Mr. Jarman in his 50th chapter, and will confidently inquire of him who will carefully peruse them whether that distinguished author is not justified in the criticism, "that it is somewhat

hazardous in the state of the authorities to lay down any general rule on the subject." 2 Jarm. 687, 688.

The case of *Mary Biddle's estate*, 28 Penna. R. 62, is the only case, when there was a limitation over in the event of *a dying without children*, in which it has ever been held that, unless some other time is fixed, the death must occur before the vesting of the estate. The court says, "Death, when? There is not a word to inform us, and the intention is therefore ambiguous. How are we to deal with this ambiguity?" And they resolve the inquiry by holding that it means death *in the lifetime of the testatrix*.

If the word "children" is to be regarded as equivalent to "issue," then the language was not, *in law*, ambiguous, but had a fixed and settled meaning, as we have already shown. And nowhere is the meaning of such words better fixed and settled, and more free from ambiguity, than in the State of Pennsylvania. In the case of *Eichelberger* v. *Barnitz*, 9 Watts, 450, Judge Sergeant says: "The principle has now become a settled rule of property in relation to lands, that if a devise be made to one in fee, and if he die without issue, or on failure of issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, which, if he has issue, passes to them *ad infinitum*, by descent, as tenants in tail. The estate vests in the first taker fully as a fee tail, and any devise over, after the failure of such, must of course be after an indefinite failure of issue, and bad as an executory devise." See also *Heffner* v. *Knepper*, 6 Watts, 18; *Clark* v. *Baker*, 3 Serg. & R. 470.

And in the 30th vol. of the Penna. Reports there are several cases decided as late as 1858, in which the same doctrine is fully and expressly recognized. *Rancel* v. *Cresswell*, 30 Penna. R. 158; *Criley* v. *Chamberlain*, Id. 161; *Pott's Appeal*, Id. 168.

These latter cases are subsequent to the case of Mary Biddle, and are, as well as the older cases, wholly irreconcilable with it.

The attention of the court has already been called to the very close resemblance of the facts in *Rancel* v. *Cresswell* to those of the case now under discussion.

The same ambiguity that was found in Mary Biddle's case existed in all these cases; the same reason for asking, "Death,

when?" the same reason for saying, "there is not a word to inform us;" and the same reason for holding that the death was to be referred to the time of the vesting of the estate. But the court, following "a train of decisions from the date of *Perrin* v. *Blake* to the present time, embracing a period of nearly a hundred years," held the principles which rule such cases to be established "beyond controversy," "which we are not at liberty to subvert, even if we could flatter ourselves with the idea that we could delineate a more perfect system on this refined subject than that which the existing law establishes." *Criley* v. *Chamberlain,* 30 Penna. R. 163.

*Van Houten* v. *Pennington,* 4 Hals. Ch. 272, 745, was not a case like the present. There the grammatical construction of the will required it to be read as if the words, "under age," were contained in it; and the court expressly decided it upon the grammatical meaning of the sentence. The court, it is true, indulge in some general speculations as to the probability and propriety of a testator doing certain things; but it is submitted that such speculations are entitled to but little weight in construing a will.

It cannot be assumed that it is the duty of a parent to give his children absolutely his entire estate, and that it is a violation of parental duty and affection to qualify their enjoyment of it. Every thing must be left to the judgment and discretion of the testator, who must be supposed to know best what provision is most suitable for his children. Much depends upon character, disposition and conduct, and what would be proper in one case might be the very reverse in another. In this very case, the testatrix knew her son: he may have been wild, improvident, dissipated; she may have seen that the only way to secure a provision for his issue was to tie up her property so that he could not dispose of it for a longer period than his own life. It may have been apparent to her that his life would be short, and that the strong probability was that he would leave no issue. We do not go out of the record to assert these facts; we only suggest that such facts may have existed, in order to show that it will not do to assume that the testatrix did not intend to impose

limitations upon her property, and that the apparent intention is unwise or unnatural.

The question is, What has the testator done? And whatever that is, must be assumed to be wise, considerate, just, and proper.

This case was argued in this court upon entirely different grounds from those relied on in the court below, and counsel for the appellees therefore had no opportunity to investigate the authorities, or to reply to the argument; and they respectfully submit, upon the review now given of the cases, that the cause ought to be reargued.

And they may add that the fact of the cause not having been argued before a full bench, and that the decision may furnish a rule of property affecting vast interests throughout the State, will present additional reasons why the case should receive a further consideration.

A reargument was granted.

*G. V. Moody* and *F. Anderson*, for appellants.

On the first argument of this case the court decided that the limitation over to the appellees depended on the contingency of the death of A. W. Sims, under the age of twenty-one, without issue.

It is insisted by counsel for the appellees that the decision is founded alone on the idea that the legacy to said A. W. Sims was a contingent and not a vested legacy; and assuming this to be the necessary foundation of the opinion of the court and of the argument of counsel for appellants, an ingenious and able argument has been presented to show that this is an error, which we shall presently attempt to answer. Denying that the opinion of the court or the arguments of counsel depend upon the supposed premises, before proceeding to discuss the question involved in it we will ask attention to some preliminary points, necessary to be understood before the main question can be properly understood.

Counsel for appellees, in the petition for reargument, rely much on that class of authorities by which the rule has been long established that a limitation over on a general dying without issue was to be construed as a limitation upon an indefinite

failure of issue, and, as a consequence, (such limitation being too remote to constitute a valid executory devise,) the use of the words, " dying without issue," was held to cut down the previous fee in the first taker to a fee tail.

The contest in all this class of cases has been, not what is the time at which the contingency of death without issue is to happen, but whether the words were used to signify a definite, or indefinite, failure of issue at the time of the death, whenever that might occur, or be required to occur under the limitation. Such was the case in *Doe* v. *Rivers*, cited from 7 Term Rep. 276, in which there was, in fact, no contest; that being clearly a case of a *vested* interest in real property, with a subsequent limitation over on a dying without issue, and it was admitted by counsel that this constituted an estate tail. The same was the case in 33 Miss. R., *Gray* v. *Bridgeforth*, in which the sole question considered by the court and discussed by counsel was, whether, under the laws of Tennessee, after a previous limitation in fee to children, a limitation over in these words, " if any of *said children die*" without heirs, *then* the property to be equally divided amongst the balance of them or the heirs of their bodies, indicate a definite or indefinite failure of issue; and it was decided that by the law of Tennessee the force of the words, " *then*," or " to. be equally divided among the balance of *his children*," changed the general rule, and made the dying without issue a definite failure of issue.

It is true that in both these cases the devise to the first taker was *when he arrived at twenty-one*, it being of real property in the first case and of personal property in the second; but it seemed to be assumed that the first taker took a vested estate in each case, and in the last one, which was of personalty, it was clearly only a postponement of the division and not of the gift. In neither one of them, however, was the question ever presented or considered, whether, in a case where the devise to the first taker is *contingent* (being subject to either a condition subsequent or precedent, it matters not which) up to *a certain time*, and is then to become absolute, and there is then a limitation over on a dying without issue, such limitation must not be construed to mean a dying

without issue before the period of time when the testator shows that the estate was to become absolute.

The same observation may be made on each of the cases cited on this point by counsel. The case of *Jordan* v. *Roach*, 32 Miss. R. 484, was where the estate given to Mary Roach was in our opinion a vested estate, but whether that be so or not, nothing could be clearer in that case than the intention of the testator that the estate of Mary Roach, though vested, should not be indefeasible until she should die, whenever that might be, nor even then until the time should arrive when her child or children surviving her should die under twenty-one years; for he says: "To make my intention plain, 'the property' (bequeathed to Mary) 'is for her sole and separate use,' &c., but if she should die without issue, &c., and this after a previous limitation in the following terms, 'to have and to hold, share and share alike, to her and her heirs forever, *subject only* to the condition and limitation as to distribution, &c., hereinafter mentioned.'"

In all of the cases referred to, then, as well as the cases of *Sharp* v. *Thompson*, cited from 1 Wharton, 139, *Rancel* v. *Cresswell*, 30 Penna. R. 158, the sole and only question presented has been, what words or expressions would control the legal meaning of the words, "dying *without issue;*" the contest being as to whether those words referred to the extinction of issue at any time, or its extinction at the time of the death of the first taker, whenever it might occur, or be required to occur by the terms of the limitation. But the other and different question already stated, whether when an estate, in the first instant contingent (whether on a condition precedent or subsequent) up to a certain time, is created, and then a limitation over on a death without issue, will not be held to mean (whether the failure of issue be considered definite or indefinite) a death without issue before the time when the estate is to cease to be contingent and become vested, has never been presented in any of them.

We think we may safely challenge the production of one single case when this question has ever arisen where it has not been held that death under such a bequest must be a death (whether with or without issue, or whether on an indefinite or definite

failure of issue) before the time fixed for the absolute vesting of the estate.

The next ground taken in the petition for reargument is presented with great ingenuity and much force of argument, but we will proceed, as we think, to demonstrate its fallacy.

It is said that the opinion of the court and argument of counsel was based on the premiss that A. W. Sims took no vested estate; from which premiss was drawn the inference that the words, " before he attains his age of twenty-one years," must be inserted in the will after the words, " should my son A. W. Sims die without lawful issue," so as to make the clause read thus: " When my son A. W. Sims arrives at twenty-one years, I give and bequeath to him all my estate, real and personal, and it is my desire and will that should my said son A. W. Sims die without lawful issue before he attains his age of twenty-one all such property, &c., shall go over," &c.

Having stated the proposition in this form, counsel proceed to cite the English cases which hold that, as to real property, when a devise is made to one when he attains the age of twenty-one, with a limitation over in the event of his dying under twenty-one without issue, the limitation over makes that a *vested estate* which, if the word " *when*" were uncontrolled by it, would have been a contingent estate; citing 3 Levinz, 132, *Edwards* v. *Hammond;* 14 East, 601, *Doe* v. *Moore;* 5 Simons, 44, *Phipps* v. *Williams.*

And here we think is to be found the great fallacy of the argument of counsel, for while it may be admitted, for the sake of argument, that many English cases, certainly not on very satisfactory reasoning, have established the rule as contended for by counsel, in cases of real property, it is perfectly certain that the rule is held to be directly the reverse in *cases of personalty;* the rule in the one case being drawn from the common law, and in the other from the civil law, as shown in 6 Ves. 236, *Hanson* v. *Graham;* 2 Blackstone Com. 513; 14 East, 601; 3 How. S. C. U. S., *Price* v. *Sessions.*

To demonstrate the error of counsel in this respect, we quote from the opinion of Lord Ellenborough, in the case of *Doe* v. *Moore,* 14 East, 603, where, deciding on this question as applied to real property, he recognizes the rule contended for by counsel,

and uses the following language: "On behalf of the plaintiff it was contended that the devisees attaining twenty-one years was a condition precedent to any estate vesting in them, and that in the mean time the same descended to the lessors of the plaintiff who were heirs, &c. And the cases of bequests of personal estate were relied on, where it has been held that a legacy given to one if, or when, he shall attain twenty-one lapses in the event of the legatee dying under twenty-one: *Stapleton* v. *Cheeles*, Prec. in Ch. 317, *Goss* v. *Nelson*, 1 Burr., and *Hanson* v. *Graham*, 6 Ves. 229, cited; and it was argued that there was no distinction between devises of real and bequests of personal estate in this respect. But that is not so, for the rules by which legacies are governed are borrowed from the civil law, whereas the decisions on devises of real estate have established a different rule, and according to them a devise to A when he attains twenty-one, to hold to him and his heirs, and if he dies under twenty-one then over, does not make the devisee's attaining twenty-one a condition precedent, but the dying under twenty-one is a condition subsequent on which the estate is to be divested." But to make this more clear, we ask attention to this subject in 6 Jarm. on Wills, 738, 755, *et seq.*

It will be seen that the rule contended for by counsel is based on that part of the treatise of Jarman which relates to devises of real estate, from page 738 to page 755, while the doctrine of the courts as to personal property is discussed from page 756 to 777. At page 756 he uses the following language: "The same general rules which regulate the vesting of devises of real estate apply, to a considerable extent, to gifts of personalty. Whatever difference exists between them has arisen from the application to the latter of certain doctrines borrowed from the civil law, which *have not* obtained in regard to real estate, having been introduced by the ecclesiastical courts, who possessed and still possess in common with courts of equity a jurisdiction for the recovery of legacies and distributive shares of personal estate."

It is true that Jarman makes a persistent effort to show that the doctrine of the case of *Edwards* v. *Hammond*, 3 Levinz, 132, *ought* to be applied to personal property; but we think, upon an examination of the authorities cited by him, it will be seen that

they fully sustain the distinction announced by Lord Ellenborough in 14 East R.

Thus, in *Bull* v. *Pritchard*, 1 Russell, 213, where the testator bequeathed personal property unto and among all and every of the children who should attain the age of twenty-three years, with benefit of survivorship in case of the death of any under twenty-three, and if there should be but one child then to him, and in case there should be no such child, or being *such, all should die under twenty-three, then over;* it was held that only such children as should attain the age of twenty-three were to take, the attainment of that age being made a condition precedent. 1 Russ. 213, *Bull* v. *Pritchard.*

Mr. Jarman says of this case at page 772 that the propriety of its determination has been questioned; citing 3 Mylne & Keene, 417, *King* v. *Badely*; but on examination of this case it will be found it does not sustain the suggestion of Mr. Jarman, and, in fact, has no application whatever to the question.

Again, in 5 Eng. Ch. R. 203, (Russ. & Mylne, 203,) *Vaudry* v. *Geddes*, after a bequest of money to be placed out at interest, which was to be equally divided between testator's four sisters, and on the death of said sisters the interest of their respective shares, at the discretion of his executors, was to be applied to the maintenance and education or accumulate for the benefit of said children of his sisters, until they should severally attain the age of twenty-two, and upon their attainment of that age they were to be entitled to their proportion of the mother's share of the principal, and in case of their decease under that age, leaving lawful issue, then to such issue, but in case of the death of *any of said children under said age without* issue then over, it was held that the legacies did *not vest until twenty-two,* the master of the rolls saying it did not differ from the case of *Leake* v. *Robinson,* 2 Merivale, 363.

The latter was a case where personalty was bequeathed for the maintenance of the children of W. R. R. until twenty-five respectively, then on trust to assign and transfer to such children so attaining twenty-five, and in case all such children die under twenty-five without issue then over; and this was held not to be a vested legacy. 2 Merivale, 363, *Leake* v. *Robinson.*

In the case of *Vaudry* v. *Geddes* cited above, the master of the rolls said that if *interim interest* is given, it is presumed the testator meant an immediate gift, because, for the purpose of interest, the particular legacy is to be immediately separated from the bulk of the property ; " *but that presumption fails entirely when the testator has expressly declared that the legacy is to go over in case of the death of the legatee before a particular period.* I speak here of *gifts of personal property* and *not of real estate.*

Mr. Jarman also undertakes to object to this case, but cites no authority, nor indeed gives any reason in opposition to it.   1 Jarm. 774.

Another case which bears directly on the question, and which Mr. Jarman contents himself with *sneering at* in a note, is the case of *Mackell* v. *Winter*, 3 Ves. 236, 536, decided first by the master of the rolls in 1796 and afterwards by Lord Eldon in 1797.   This was a bequest of personalty to two grandsons and a granddaughter of the testator, to be equally divided between them, the shares of the grandsons to be paid at twenty-one, and that of the granddaughter at twenty-one or marriage.   In case of death of the granddaughter under twenty-one or marriage, her share to be equally divided between the grandsons, and in case of the death of either of them the whole to the survivor; if either of the grandsons died under twenty-one his share to go to the surviving grandson, and if both the grandsons should *die under* twenty-one and the granddaughter under twenty-one and unmarried, then over to a nephew.   Both grandsons died under twenty-one.   It was held by the master of the rolls that the grandsons took vested interests and the granddaughter a contingent interest; 3 Ves. 236. But Lord Eldon reversed this decision, and held that all the interests were contingent and not vested, and that the grandsons having died under twenty-one and the granddaughter having attained that age, she took the whole ; and it is to be remarked that in this case the court, from the general tenor of the will, interpolated a limitation in favor of the granddaughter in case of the death of the *grandsons* under twenty-one, although no such limitation was to be found in the will.   In all its features it seems to be decisive of this case.

The case of *Barker* v. *Lea*, 11 Cond. Eng. Ch. R. 225, (1 Turner

& Russell, 413,) is still more conclusive.   This was a bequest of a residue of personalty to the nephews and nieces of testator who should be living at his decease, on their respectively attaining the age of twenty-five years; but, in case of the death of any of them leaving issue, then the child to have the share of the parent, the profits and proceeds of the estate to be applied to the maintenance, education, and support equally of said nephews and nieces until they attain the age of twenty-five years; and, in case of the death of any or either of them *unmarried and without issue,* then over to the survivors, to be paid to them along with their original shares.   It was held, first, that the contingency of death without issue meant death without issue under twenty-five years of age; second, that, notwithstanding the limitation over on the death of the first taker under the age of twenty-five, the estate was not vested, but contingent.

The only case which seems to stand in opposition to this array of authority is that of *Bland* v. *Williams*, 3 Mylne & Keene, (8 Eng. Ch.) 411; and in reference to it we may remark that even Mr. Jarman seems to admit that it is inconsistent with the other cases, for, in alluding to the remark of Sir J. Leach in giving his opinion " that all the cases on the subject except that of *Bull* v. *Pritchard* are reconcilable with it," he says, "it is submitted, however, that if his honor's own decision in the case of *Vaudry* v. *Geddes* and also the case of *Barker* v. *Lea*, be brought to the test of the principle of construction here propounded, it will be found no less difficult to sustain them than *Bull* v. *Pritchard.*"   We may add that the remark of Mr. Jarman is equally applicable to the other cases herein cited on this point.   Enough has been said, we think, to demonstrate the fallacy of the argument of counsel on this point.

But suppose we should be mistaken in the views last presented, and that the doctrine of the case of *Edwards* v. *Hammond*, 3 Levinz, is applicable to bequests of personal property.   It does not follow, as will be hereafter shown, that the legacy in this case, though vested, is not contingent; that is to say, in that *view*, the legacy would depend not on a condition precedent but on one subsequent, by the happening of which it would be defeated, and the construction for which we contend would in that case be re-

quired by reasons equally cogent. This will be shown hereafter, but we desire here to ask attention to rule as stated by Jarman in his application of the principle of *Edwards* v. *Hammond* even to real estate; we quote from 1 Jarm. 738: "Although (as already hinted) there is no doubt that a devise to a person if he shall live to attain a particular age, standing alone, would be contingent," yet if it be followed by a limitation over in case he die under such age, the devise over is considered *as explanatory of the sense in which the testator intended the devisee's interest to depend on his attaining the specified age, viz., that at that age it should become absolute and indefeasible.* The interest in question, therefore, is construed to vest instanter.

To pursue the inquiry, however, whether this was a vested legacy in A. W. Sims before twenty-one. The next position taken by counsel is founded on the law applicable to real property, and will be briefly noticed. The citation made from 1 Jarm. 488, is but an enunciation of the principle which is involved in the following rule of conveying in real property: "If *lands* are devised to the *testator's heir apparent in fee,* in case A should die without issue, this would make A tenant in tail, with reversion in fee to testator's heir; the event described being precisely that which would involve the extinction of an estate tail, and it being impossible to suppose that the testator could *intend to make a devise, to take effect at a future period,* to the very person who would, in the absence of disposition, take the property by act of law, without intending that it should in the mean time devolve on some one else."

This and the subsequent quotation from 1 Jarm. 734, referring to Coke's R. 19, evidently refer entirely and exclusively to real estate. The doctrine of regarding the interest of an executor in personalty, which he holds for the purposes of the will, whatever they may be, as a particular estate, so as to make a bequest to one "*when*" he attains twenty-one a vested remainder, has never been hinted in any case whatever; and we need only say, in reply to this position of counsel, if it were true, all of the cases that we have cited and all the cases which have arisen in England and America on the effect of the word "when" in connection with bequests of personalty would be not only erroneous but *absurd,*

since in every one of them the executor, as here, holds the personalty in the first instance for the purpose to be delivered or distributed by him to the various legatees when and as their legacies are payable.

These remarks are also applicable to the case of *Cadogan* v. *Evart,* 34 Eng. C. L. 187, since it was decided on the authority of *Boraston's case;* but we will state it briefly, to show its irrelevancy to the point under consideration. It was a devise of real estate to the wife of testator during life or widowhood, and, if she died or married, in trust to apply the rents, &c., to the maintenance of his daughter until she attained the age of twenty-five, and from and after her attaining that age then in trust for her and her heirs forever; but, in case it should happen that she depart this life without leaving issue, then over to plaintiffs. The daughter, claiming an estate tail, took the necessary steps to cut off the entail, and then, by virtue of a power contained in the will under which she claimed, made a will in favor of her husband, the defendant. The only contest in the case was, whether the limitation over was an executory devise dependent on the contingency of the death of Isabella without issue then living, in which event she could not cut off the entail; or whether the limitation over was on an indefinite failure of issue, in which event she took an estate tail; and, as she had cut off the entail, the title of her husband under the will was good, and so it was decided. The words, " leaving issue," were relied on; but Lord Denman said they did not change the legal construction of the words, " dying without issue," as to realty. It is true that it was held to be a vested estate *in the daughter,* but, as it was a devise of realty, the rule we have already commented on of course required that decision. The struggle by the court was to vest an indefeasible estate at the earliest period, and this was done by holding the supposed executory devise as too remote, and thus vesting an indefeasible estate tail at the death of the testator.

Counsel contend next that, because by the fifth and twelfth clauses of the will testatrix had requested her son to select her executor as his guardian, and had directed the plantation to be carried on by Marye as her executor and as guardian of the son, therefore the personalty vested in the son at death of testatrix.

This is not so.  The executor, in the third clause of the will, was expressly directed to carry on the plantation, making cotton and corn, until the son arrived at the age of twenty-one years; and by the fifth to carry on as executor and as guardian.  Now it is manifestly absurd to suppose that the plantation and slaves could have been held and carried on by the same person, holding the same in two inconsistent characters, as executor and guardian, at the same time.  But the truth was, that the son, at date of the execution of the will, had other estate inherited from his father, of which estate it was necessary there should be a guardian.  This appears from the face of the will, which shows that testatrix was the mother of A. W. Sims.  Now, unless the court will presume the son illegitimate, the mother must have been a widow, for a married woman cannot, unless husband consent, make a will.  There is no consent of husband.  The property named in this will was the portion which P. A. Kenley took as widow of Sims, and the property as to which a guardian was desired was the son's portion of his father's estate.  In this view the provision of the will is rational.

But, whatever purpose the testatrix may have had in making this request, she appointed no guardian; she could not do so, and she gave him no estate, and it is impossible to build on this simple suggestion a particular estate, so as to make the limitation to the son a vested remainder to take effect upon the termination of the particular estate, so much pressed by counsel.  Certain it is that even the actual appointment of a guardian could not vary the nature of the interest to be taken by the son in the property ; he was to take alike the principal *and the profits* when he attained twenty-one, and not before.  The profits or interest were in no manner severed from the principal, but to remain with it and to depend on the same contingency.

But it is said the executor was to retain possession so long as necessary to execute the trusts of the will *by payment* of debts and legacies, and then should hold it as her son's guardian during the remaining years of his minority.  A short and conclusive answer to this is, that by item third of the will, the *executor is directed* "to carry on the plantation, making cotton,

corn, &c., until my son, Allison Wade Sims, shall arrive at the age of twenty-one."

But, it is asked, how hold it as a guardian unless the son had a present interest? The answer to this question is equally conclusive. He could not hold it as guardian, since he was to hold it as executor. For what purpose, then, it may be asked, was it desired by her that he should have a guardian? The answer to this is also plain and easy. He was to be the guardian of all the interest of the son, *whether vested* or *contingent;* and if we are mistaken in what we said before, and this request bore no reference to the guardianship of his person and estate derived from his father, then it bore reference to the interest he took under the will, whether vested or contingent, and if contingent, whether depending on a condition precedent or subsequent. That such an interest may be the subject of guardianship is clear from the authority. Counsel have, as we think, been misled in supposing that, because an unvested or contingent interest, as we contend this to be, cannot go to his executor, therefore it could not go to a guardian. The reason why such interest would not go to the executor or administrator of A. W. Sims is, that by his death the estate is defeated, whether it depended on a condition precedent or subsequent. But suppose the property had been given to A. W. Sims when C. D. arrived at the age of twenty-one, and A. W. Sims died before that time, nothing is clearer than that the executor of A. W. Sims would take this contingent interest; and the rule is the same in regard to realty. If A, to whom there has been limited an estate upon a condition precedent, dies before the condition is performed, his interest descends to his heir. See Jarm. on Wills, 777, 778; 7 Metcalf, 363; *Winston* v. *Goodwin,* Williams on Exors. 1083, 795; 1 P. Williams, 564, *Penburg* v. *Ellsen;* 2 Atkins, 616, *Chauncey* v. *Graydon;* 1 Ves. Sr. 236, *Pech* v. *Parrot.*

If we have been successful in our reply to the objections of counsel to the opinion that the legacy to A. W. Sims did not become vested until he attained twenty-one years, we have but few words to add on this point. The rule is so clearly stated in Williams and Jarman and the other authorities cited by us on the former argument, that we need only call attention to it.

The word " when," in bequests of personalty, implies a condition precedent, and unless there are other words in the will to control this construction it must prevail.   The exception is, that if the whole of the *interim* interest or profit is given, an intention is inferred that the estate shall vest; but then the gift of interest or profits must be such as to *sever* them from the body of the bequest, for if they are merely given to go with the principal and depend on the same contingency, it is manifest the reason of the exception does not apply.   And we do not understand counsel to controvert this proposition, the only objections made by them to the opinion of the court being founded on the supposed operation of the limitation of "dying under twenty-one without issue" as construed by us, and of the *clauses* requesting the son of testatrix to select her executor as his guardian, &c.   Williams on Exors. 1100, 1105, 1112, &c.; Jarm. on Wills; 1 McMullen R. 201, *Seabrook* v. *Seabrook,* 209; 6 Porter, 507, *Mary* v. *McCulloch;* 1 Iredell's Ch. 55, *Anderson* v. *Shelton;* 6 Ves. 239, *Hanson* v. *Graham.*   See our brief on the first argument.

It is urged that the effect of this construction would be, that if A. W. Sims died under twenty-one with issue they could not take, because they must take, if at all, as heirs of his body, and if the estate was not vested there would be nothing to pass by inheritance.   This is, we think, more plausible than sound.   It is a necessary implication from the authorities that, under a bequest of this kind, where the words, "dying without issue," are used, such an intention is manifested in their favor as to give them an interest under the bequest.   It may be true that his issue, if he died under twenty-one, could *not take as his heirs,* but it is perfectly certain that they would take either by virtue of the necessary implication in their favor from the use of the words "dying without issue," or they would take as the heirs of the testatrix herself.

These considerations must be supposed to have been in the mind of the testatrix : 1. She desired that if her son died under twenty-one, without issue, her estate should go to the ultimate limitees.   2. If he died under twenty-one, and left issue, they should have the property.   3. If he arrived at twenty-one he should take an absolute and indefeasible estate; otherwise her

bounty to her only son would be reduced by one-half *its value at least.* All these objects, so manifestly just and proper, and so natural, viewing the relations of the parties, would be certainly and inevitably attained by the construction we have given to the will, and would as inevitably fail by the construction of counsel for appellees.

Finally, it is insisted by counsel that the cases on the authority of which the decision was made have no application, and it is said that the class of cases which relates to limitation upon the *death of the first taker without issue,* and that which relates to limitations on *the death of the first taker simply, without any collateral circumstance to qualify it,* have no analogy to each other, but like parallel lines would run on forever without meeting; that while, in the former class of cases, the limitation *has always been held valid,* and creates an estate tail or fee, determinable whenever death without issue should occur, according as the language employed has been held to import a definite or indefinite failure of issue, in the latter it has always been held as a substitutionary gift or alternative disposition.

We ask attention to what appears to us to be a fallacy in this statement of the cases. It is a mistake to say that limitations of the first class are *always held valid,* and estate either estate tail or fees determinable. If such limitations are held valid, they always constitute executory devises to the ultimate limitee, and leave a fee determinable in the first taker. It is only in cases where such limitations *are held void for remoteness* that an estate tail arises, not by virtue of the limitation but because the words employed in such void limitation seem to show that the previous limitation in fee was unlimited to be a fee tail. In the latter instance there is no substitutional gift, as the issue take by virtue of the limitation to the first taker. But in the first instance it is as much a substitutional gift as a limitation upon the death of the first taker, and is so treated in the cases. 2 Jarm. on Wills, 670, 671.

We maintain that the cases cited in our first brief clearly show that the rule of the court, which had been applied to that class of cases where the limitation over was upon the death of the first taker simply, applying words of *contingency to that event,* has also

been applied to that class of cases where the limitation was upon the death of the first taker under circumstances which made the event contingent.

We did not cite all the cases which establish the rule, since they were stated and reviewed in the case of *Home* v. *Pillans,* 7 Cond. Eng. Ch. R. 248. Suffice it to say that it is not denied that they do establish the rule in its application to all cases where the limitation over or substitutional gift is upon death simply; and the authorities cited by us made it clear that the same rule had been uniformly applied, both in England and America, to cases where the limitation over or substitutional gift was upon death, under such circumstances as created a real contingency, and where the estate of the first taker was contingent, whether the contingency was in the form of a condition precedent or subsequent.

Nothing can be clearer than that we have established our case, if we show that the rule has been applied to cases where death was under circumstances that made it contingent, even though the particular contingency of death without issue may not have been adopted; and such was undoubtedly the application of the rule in the cases cited by us.

Thus, in the case of *Galland* v. *Leonard,* 1 Swans. 161: the limitation was to two daughters, W. and A., after a life-estate in the mother, and the limitation over or substitutionary gift was, "in case of the death of them, his said daughters, leaving a *child or children, then to the children.*" This was manifestly a valid devise over or substitutionary gift to the children as *purchasers,* and the devises to the daughters in the first instance were vested remainders; but inasmuch as the intention was apparent that on the death of the mother the right of the daughters was to become absolute, it was held that the limitation over, although it was not in the case of death only, but death under circumstances which made it contingent—that is, death leaving children—could only take effect in case the death occurred before the time fixed for the absolute vesting of the estate. The reason given by the court was the propriety of making the subsequent limitation, though it was, in case of death under circumstances making it contingent, consistent with the previously ascertained intention

that the estate of the daughters should vest absolutely on the death of the mother, and not the reason which Mr. Jarman gives at p. 694, 695, of his second volume. 1 Swans. 161, *Galland* v. *Leonard.*

The same in effect is the case of *Home* v. *Pillans;* and it is in vain to allege that "death leaving issue" is not as much a contingent event as death without leaving issue. 8 Cond. Eng. Ch. R. 238.

The same also in substance is the case of *Thackeray* v. *Hampson,* 2 Sim. & Stew. 1 Eng. Ch. R. 214.

· These cases, and the others cited from English reports in our brief, clearly establish our proposition, that the rule has been uniformly applied in England to the cases where the contingent limitation over or substitutionary gift is upon a real contingency, as maintained in our original brief; while the cases cited by us from the American courts show that the rule has been, in every instance where it has been the subject of discussion, applied to the case of a limitation over on the contingency of *death without issue.* 4 Halsted Ch. R. 273, 745, *Pennington* v. *Van Houten;* 28 Penna. R. 62, *Estate of Mary Biddle;* 2 Stockton N. J. Ch. R. 373, *Williamson* v. *Chamberlain;* 1 Saxton Ch. 141.

We have, thus far, assumed that the legacy in this case did not vest until A. W. Sims arrived at the age of twenty-one years. It will be evident to the court, however, from an examination of the authorities, that the fact that the legal vesting in interest of the bequest should be postponed is not essential to the principle they establish, and that the rule they go upon would be equally applicable if the estate were vested in interest, though not in enjoyment, *eo instanti* the death of the testator, and subject to the contingency of being subsequently defeated by the limitation over.

It is not the time fixed by the bequest for the mere legal vesting in interest of the legacy, but the time when the interest is to become absolute and indefeasible, that is taken by the courts for limiting the time at which the limitation over or substitutionary gift is to take effect. This is sufficiently deducible from the reasoning of Lord Brougham in the case of *Home* v. *Pillans;* but it was the necessary result of the decisions of the courts in the

case of *Galland* v. *Leonard*, 1 Swanston, 161, and the case of *Pennington* v. *Van Houten*, 4 Halsted Ch. 745; for in each of those cases it will be seen that on the principles we have contended for, the legacies were vested in interest, though not in possession, at the death of the testator. It is also the necessary result of the principles established in all the cases cited, for the force and effect of their reasoning is, that a limitation over, on a contingency of death without issue, is held to mean such a death before the time when the absolute and indefeasible interest is to vest.

We have already seen that a vested estate may be contingent—that is, subject to a contingency which may defeat it; and we may add that the construction placed by Jarman, vol. 1, p. 748, upon *Edwards* v. *Hammond* and the other cases relied on by counsel for appellant is, that in cases identical with this the devise over on our construction of it is considered as explanatory of the sense in which the testator intended the devisee's interest (alluding to real estate) to depend on his attaining the specified age, namely, that at that age it should become absolute and indefeasible.

In conclusion, on this point, we may confidently state the proposition, as a necessary result of the authorities, that in every case of a contingent legacy where the possession is severed from the legal interest and is postponed, though the legal interest may vest, and where, though the legal interest does vest, yet it vests subject to be defeated by a condition subsequent, such as dying without issue, or dying leaving issue, the contingency will be limited to the time anterior to the time of vesting in possession and absolutely, from which time the contingency ceases and determines. Counsel also, in their original argument and in the petition for reargument, contend, that by the construction of the will which we maintain the effect will be "to defeat her plainly expressed intentions in favor of her own blood, and give the estate to the next of kin to her son, who may be relatives on his father's side, and whom she, with equal clearness, showed her intention to exclude." We submit in the first place there is no such intention in favor of her own blood, unless the contingency shall happen, which we have shown and the court has decided never arose, to wit, a dying without issue before the estate vested.

But it appears by the bill in this case that the sister of the testa-

trix, Jane Cummings, for whom testatrix has evinced equal affec-
tion as for her cousins, is one of the heirs at law of A. W. Sims,
and that E. Hoel is his only other heir, and it does not appear
whether she is related on his father's side or not. But such con-
siderations ought not to influence the court in arriving at the
intentions of testatrix, but they will decide according to the doc-
trine asserted in the case in 4 Halsted, *Van Houten* v. *Pennington*,
and decide the case "just as they would if the devisee himself or
his alienee were before the court, claiming under its provision. A
will is not to be construed according to future contingencies, but
according to the true meaning appearing on the face of it. At
the death of the testator, contingencies not contemplated cannot
be provided against."

It is asserted by counsel of appellees that the words, "dying
without issue," are technical words, and have a technical meaning.
This we deny. Those words had at common law a meaning
different from the popular acceptation; to wit, they meant an ex-
tinction of the issue of the first taker at any time after the death
of the first taker; but 26th section of Hutchinson's Code, 610,
destroyed that technical meaning, and but one, the vulgar sense
of the words, only remains. Now it is absurd to say that where
words have only one signification they can be technical. The
testator in the case at the bar, according to our construction of
the will, used the words, "dying without issue," in the sense to
which they were restrained by the 26th section of the statute, and
none other—that is, death without issue living at that time; but
what we do insist on is, that that death should be before the estate
absolutely vested in A. W. Sims.

*H. T. Ellett*, for appellees.

The appellees contend that under the fourth and seventh items
of the will of P. A. Kenley, her son, A. W. Sims, took a fee
simple in all her personal estate, vesting in interest immediately
on her death, and defeasible by the event of his death at any time
without lawful issue living.

Where a testator uses technical words he is presumed to employ
them in their legal sense, unless the context clearly indicate the
contrary. 2 Jarm. on Wills, 744, 17th rule. The language used

in this will is technical language, and has long had a fixed and settled meaning in the law. If an estate be given to A and his heirs, or his heirs forever, with a limitation over in case of his death without issue, or heirs of his body, such language has by the common law been uniformly held to give to A an estate tail. 4 Kent, 274–276; 2 Jarm. 237; 1 Id. 488; 6 Cru. Dig. tit. Devise, chap. 12, sec. 7 to 32, p. 290; 5 Johns. Ch. R. 35; *Goodrich* v. *Harding,* 3 Rand. 280; *Broadus* v. *Turner,* 5 Id. 308; *Whitworth* v. *Stuckey,* 1 Rich. Ch. 404; *Vedder* v. *Evertson,* 3 Paige Ch. R. 281; *Eichelberger* v. *Barnitz,* 9 Watts, 450; 6 Id. 18; 3 Serg. & Rawle, 470; 30 Penna. R. 158–161, 168.

The rule fully recognized by this court in *Jordan* v. *Roach,* 32 Miss. R. 604–621; *Gray* v. *Bridgeforth,* 33 Id. 312.

The only question mooted in such cases has been, whether the limitation over is good; and such general phraseology as that contained in this will has always been held to import an *indefinite* failure of issue—that is, a failure of issue *at any time,* as contradistinguished from a failure of such issue *at the death of the first taker;* and such limitations have therefore been held to be void for remoteness, not coming within the period allowed for executory devises to take effect. On the other hand, when the limitation over has been expressly made to depend upon a failure of issue *living at the death* of the first taker, it has been held to be valid.

This rule for the interpretation of these words has been reversed in Mississippi, and, by express statutory enactment, " every contingent limitation in any deed or will, made to depend upon the dying of any person without heirs, or heirs of the body, or without issue, &c., shall be held and interpreted a limitation to take effect *when such person shall die,* not having such heirs, issue, &c., *living at the time of his death,* or born, &c.," unless a contrary intention be *expressly* and *plainly* declared. By this statute a *fixed* and *certain* signification is given to these general words of limitation, which cannot be departed from except to carry out an intention expressly and plainly declared.

The effect of this enactment, in changing the rule of the common law, and construing these general limitations as depending on a definite failure of issue, is thus clearly stated in the lucid synopsis of the case of *Jordan* v. *Roach,* 32 Miss. R. 481, to wit: " a devise

to one and his heirs generally, with a limitation over depending on the death of the first taker without issue living at his death, creates a fee simple in the first taker, determinable by an event which defeats it, with an executory devise depending on that event."

And it makes no difference whatever in this respect whether the estate vested in A. W. Sims at his mother's death, as we have assumed, or whether it did not vest until he arrived at the age of twenty-one years; for, if he died before the estate vested, the devise lapsed, and if he lived until it vested, then he took what would have been a fee tail by the common law, but, under our statute, a fee determinable by his death at any time without issue then living.

The authorities are numerous and full on this point. *Gray* v. *Bridgeforth*, 33 Miss. R. 312; *Doe* v. *Rivers*, 7 Term R. 276; *Maurice* v. *Graham*, 8 Paige Ch. R. 483; *Sharp* v. *Thompson*, 1 Wharton, 139; *Rancel* v. *Cresswell*, 30 Penna. R. 158; *Jordan* v. *Roach*, 32 Miss. R. 608.

We insist, however, that, upon the true construction of the will, the estate did not vest in interest in A. W. Sims at the death of the testatrix, and that the period of enjoyment only was postponed until he became of age; and in support of this view will briefly suggest a few considerations that are obvious.

1. The law favors the vesting of estates. 1 Jarm. 726.

2. If the estate is held not to have vested until the devisee became of age, it will follow that, had he died after the testatrix, and before coming of age, the whole testamentary disposition would have failed by lapse, and any issue he might have left could have taken nothing under the will, for want of any estate in him to be transmitted to them by inheritance.

3. " It is impossible to suppose that a testator would intend to make a devise, to take effect at a future period, to the very person who would, in the absence of disposition, take the property by act of law, without intending that it should in the mean time devolve to some other person." 1 Jarm. 488. Here the third item of the will directed the executor to carry on the plantation, until the son of testatrix should arrive at the age of twenty-one years; and by the fourth item, when her son should arrive at the age of

twenty-one, she gave him all her estate. The carrying on the plantation necessarily implied the possession and control of the slaves, and here there was a partial interest given to the executor, to continue until the son arrived at age, and then the whole estate was given to him. The law applicable to such a case is thus laid down : " Where a testator devises to trustees until A shall attain the age of twenty-one years, and *if* or *when* he shall attain that age then to him in fee, this is construed as conferring on A a *vested* estate in fee simple, subject to the prior chattel interest given to the trustees." 1 Jarm. 733, 734; *Boraston's case*, 3 Coke R. 19 ; *Doe* v. *Ewart*, 7 Adol. & El. 636, (34 Eng. C. L. R. 200, 201.)

4. If it appear from any direction or expression contained in the will, or if it can fairly be deduced from the entire instrument, that the intention of the testator was that the legacy should vest immediately, such intention shall prevail. *Gifford* v. *Thorn*, 1 Stockton, N. J. 708 ; *Letchford's Appeal*, 30 Penna. R. 175 ; *Scott* v. *James*, 3 Howard, 307–312 ; *Wade* v. *Grimes*, 7 Id. 425, 432 ; *Doe* v. *Ewart*, 24 Eng. C. L. R. 200, 201. In this case not only does the testatrix not give the intermediate estate to any one else in distinct and express terms, but in the fifth and twelfth clauses she requests her son to choose her executor to be his guardian, and directs " that the plantation be carried on by him *as my executor*, and *as his guardian*, until my said son arrives at the age of twenty-one years." Whether she intended the property to be held by Marye in the double capacity of executor and guardian, or as executor until the debts were paid, and the estate settled, and after that as guardian, is unimportant. It is clear that one way or the other it was her will that Marye should hold it in some way, or in some degree, *as guardian of her son during his minority*. As he could not thus hold it unless the son had some interest in the estate, it is made demonstrably certain that she intended the estate to vest in him before he attained his majority.

5. And if it be true, as contended for on the other side, (a construction which we deny to be correct,) that the will is to be read as though the limitation in the seventh clause was to take effect only in the event of the death of A. W. Sims *before attaining the age of twenty-one*, without lawful issue, then the authorities are

clear that the interest did vest in him on the death of his mother. 1 Jarm. 738, 739, and cases cited.

These considerations we think show that A. W. Sims took a vested estate on the death of his mother, notwithstanding the general rule, which we fully recognize, that a devise to A *if* or *when* he attains the age of twenty-one years, standing alone, detached from the context, would confer a contingent interest only.

In laying down the rule, that a limitation over upon an indefinite failure of issue cuts down the fee into an estate tail, we understand of course that the proposition is only strictly true of land, and that, by the common law, language which would create an estate tail in realty will pass the fee simple in personalty. But that does not affect the validity of the limitation over. Words that by the common law would create a fee tail in land, now by our statute create a fee simple. A fee may be limited upon a fee, by way of executory devise, and limitations of personalty by way of executory devise, or contingent remainder, are good. 4 Kent's Com. 269; *Harris* v. *McLaren*, 30 Miss. R. 568, 569; *Gray* v. *Bridgeforth*, ut sup.

Our object is to show that the language of Mrs. Kenley's will has always had a fixed technical meaning, and our position is, that A. W. Sims took a *fee simple*, determinable on the contingency stated.

The intention of the testatrix, as manifested by the will, is in harmony with these rules of law. That intention clearly is, that her son, and his descendants, if he left any, should have her estate absolutely; but, if he died without issue then living, that the estate should go to *her* kindred, and not to the collateral heirs of her son, who might be relatives on his father's side. This was a natural and proper disposition, which ought to be sustained, if it can be, consistently with the rules of law, and which ought not to be defeated unnecessarily by construction. Who can say that it was not a wise disposition, and consistent with parental duty and affection? It may have been the greatest kindness to the son, thus to clog his right of alienation during his life. He may have been dissipated, improvident, undutiful. She may have seen that his life would be short, and that she was adopting the best mode to secure a provision for his issue. At all events, she had

a right to make a will, and to dispose of her property, as she saw fit.  Whatever her will is, it must prevail.  Nobody has the right to impeach it, on the ground that it was unwise, or against parental duty and affection.

On the former argument of this cause it was distinctly conceded that the executory devise contained in Mrs. Kenley's will is valid —a proposition indeed abundantly established by a long train of decisions in this court.  *Carroll* v. *Renick*, 7 S. & M. 798–806; *Kirby* v. *Calhoun*, 8 Id. 462–471; *Rucker* v. *Lambden*, 12 Id. 230–256; *Rail* v. *Dotson*, 14 Id; *Powell* v. *Brandon*, 24 Miss. R. 343; *Hampton* v. *Rather*, 30 Id. 193; *Jordan* v. *Roach*, 32 Id. 481–621; *Gray* v. *Bridgeforth*, 33 Id. 312.

It was also admitted that no case was made for changing, substituting, or interpolating words, or altering the coloration of sentences or phrases, in order to effectuate an assumed intention.

But it was argued that the limitation in the seventh clause was made in ambiguous language, inasmuch as it did not ascertain a particular time at which the death without issue was to occur; and being thus ambiguous and requiring construction, the court must refer the contingency of death to the time appointed for the vesting of the estate; and as the devisee had lived until the period when the estate vested, as well in possession as in interest, it must be held to vest absolutely, and to cut off the limitation over.  It was said that the absolute estate conferred by the fourth clause could not be cut down to a life-estate, or a determinable fee, by the ambiguous language of the seventh clause.

It was at the same time acknowledged, as was very apparent without the admission, that it could make no difference in regard to the decision of the cause whether the estate vested in A. W. Sims at his mother's death, or on his arrival at the age of twenty-one; for the authorities relied on showed that it was to the time of the vesting of the estate, whenever that might be, that the contingency of the death was to be referred, whenever the rule contended for was applied.

We deny that any case can be found, with perhaps a single exception in Pennsylvania, in which it has been held that such language as is employed in this will, where a contingent limitation is made to depend upon a general and indefinite failure of

the issue of the first taker, is of doubtful or ambiguous import, or requires or admits of the construction that the death without issue must occur before the estate vests, otherwise it will vest absolutely, and the limitation be cut off.

There are two large classes of cases in the books, relating to limitations of real and personal property after the death of the first taker. The first class relates to limitations to take effect upon the death of the first taker *without issue;* and the other class to limitations upon *the death of the first taker simply*, without any circumstance to qualify it. Limitations of the first class, as we have shown, have always been held to create an estate tail in the first taker, or a fee determinable whenever the death without issue should occur, according as the language in each case has been held to import an indefinite or a definite failure of issue. Cases of the other class—to wit, where the limitation is upon the death of the first taker simply—have received a different interpretation. When an estate is given to A and in case of his death to B, though in form it is a limitation upon a contingency, yet it is not so in fact, but is treated by the courts as a *"substitutionary gift,"* or an *"alternative disposition,"* by which names it is indifferently called. Language importing contingency being applied to a certain and inevitable event, to wit, *death*, it becomes necessary for the court to determine by construction what contingency the testator meant, and to refer the event—death—to some collateral circumstance which will make it contingent. Accordingly the courts have adopted the rule that in such cases the testator will be presumed to have meant death before the time when the estate is to vest in the first taker, whether that be at the death of the testator, or at some other time appointed by the will; and that if the first taker survive the testator, or live until the period when the interest is to become vested, it shall vest in him *absolutely*, and the substituted gift shall never take effect.

" The difficulty in these cases," says Powell, "arises from the testator having applied terms of contingency to a certain inevitable event, (for such, death, at some period, obviously is,) and which renders it necessary either to read them as referring to the event of death whenever it shall happen, by which it is evident

rather a strained construction would be given to the testator's words, or—which is the alternative adopted—to construe the expression as referring to death under some circumstances in association with which it is contingent. That circumstance is naturally the time of its happening; and that time, when the request is immediate, necessarily is the death of the testator, there being no other period to which the words can be referred." 2 Powell on Devises, chap. 37, p. 758. See also 2 Jarm. 659, chap. 68; note *a* to *Lord Douglas* v. *Chalmer*, 2 Ves. Jr. 201; Edin's note *a* to *Billings* v. *Sandom*, 1 Bro. Ch. C. 393.

Sir William Grant says: "The expression itself is inaccurate, as it applies words of contingency to an event that is certain. No man can with propriety speak of death as a contingent event which may or may not happen. When therefore a testator so expresses himself, the question is, what he means by that inaccurate expression. He may have had some contingency in his mind." *Cambridge* v. *Rouse*, 8 Ves. 21. And in *Webster* v. *Hale*, 8 Ves. 413, the same eminent judge says: "The difficulty in all such cases is, to ascertain what the testator intended by applying words of contingency to an event that is certain. The words taken literally imply doubt as to an event of which no doubt can be entertained. A construction, therefore, is absolutely necessary."

So Lord Brougham, in *Home* v. *Pillans*, says: "There can be no question that a bequest to any person, and in case of his death to another, is an absolute gift to the first legatee, if he survives the testator; and this whatever be the form of expression, as, 'if he die,' 'should he happen to die,' 'in case death should happen to him,' and so forth. The event here contemplated being so inevitable that it cannot be considered a contingency, the courts have held that something else must be intended than merely to provide for the case of the legatee dying at some time or other; and have said that they will rather suppose the testator to have contemplated and provided for the case of the legatee dying in his own lifetime," &c. 2 Mylne & Keene, 20, 7 Eng. Ch. R.

Now, *dying without issue* is not a certain or inevitable event, but is necessarily contingent. The contingency in the mind of

the testator is plainly expressed, and hence such words do not require or admit of construction. And therefore Powell, after a review of the cases, uses the following significant language: "It may be remarked, too, that the rule under consideration, which construes expressions providing for death as a contingent event, as confined to its happening in the lifetime of the testator, does not apply where it is expressly coupled with any circumstance which renders it contingent, as in case of the death of A without children, or under twenty-one, or *if he die without issue,* for, *cessante ratione lex cessat.* The devise over, therefore, takes effect at the happening of the event *at any period.*" 2 Powell on Devises, 764, 765. .

The following are the authorities on which the rule of construction in question rests, and they are all cases where the limitation over was upon the simple contingency, "if he die," "in case of his death," "should he happen to die," and the like, without any circumstance being associated with the event that could make it contingent. *Lowfield* v. *Stoneham,* 2 Strange, 1261; *Trotter* v. *Williams,* Prec. Ch. 78, 2 Eq. La. Ab. 344; *Hinkley* v. *Simmons,* 4 Ves. 160; *King* v. *Taylor,* 5 Id. 806; *Turner* v. *Moore,* 6 Id. 557; *Cambridge* v. *Rouse,* 8 Id. 12; *Webster* v. *Hale,* 8 Id. 410; *Ommaney* v. *Beavan,* 18 Id. 291; *Wright* v. *Stevens,* 4 Barn. & Ald. 571, 6 Eng. C. R. 520; *Slade* v. *Milner,* 4 Madd. Ch. 144; *Harvey* v. *McLaughlin,* 1 Price Exch. 264; *Origan* v. *Barnes,* 7 Simons, 40; *Clarke* v. *Gould,* 7 Id. 197.

*Billings* v. *Sandom,* 1 Bro. C. C. 393, and *Nowlan* v. *Nelligan,* Id. 489, decided by Lord Thurlow, and *Lord Douglas* v. *Chalmer,* 2 Ves. 501, decided by Lord Loughborough, were cases of the same description, but received a different determination.

None of the above cases were cited on the former argument of this cause; but other cases, which were professedly decided upon their authority, and which assume to do no more than to assert and apply the same doctrine, were cited and relied on as establishing the proposition that, in a case like the present, where the limitation over is upon a dying *without issue living at the death,* the same rule applies, and that, if the first taker lives until the time when the devise vests, it vests absolutely, and all the ulterior limitations are defeated. Such a conclusion cannot

be admitted without overruling the vast multitude of cases in England and America, including a long train of decisions in this court, in which it has been held that a limitation over after words that would create a fee simple, made to depend on an indefinite failure of issue, cuts down the fee to an estate tail, and that a similar limitation upon a definite failure of issue creates a fee determinable by the death of the party *at any time*, without such issue then living; nor without holding that there never was a case in any court out of which the abstruse learning contained in our law books in regard to the validity of these limitations could properly have arisen, unless there was a *fixed point of time* at which the death without issue should occur.   What a waste of learning in *Jordan* v. *Roach*, if that case admitted of the easy solution that, as Mary Roach lived until the estate vested, (which it did, either at the death of her father, or at the period of her marriage,) it vested *absolutely*, and the subsequent limitations upon her death without issue were cut off.

The English cases cited and relied on by the counsel of the appellees were, *Thackeray* v. *Hampson*, 2 Sim. & Stew. 214, 1 Eng. Ch. R.; *Home* v. *Pillans*, 2 Mylne & Keene, 15, 7 Eng. Ch. R.; and *Galland* v. *Leonard*, 1 Swanst. 161.

None of these cases, when examined, furnish any countenance for the doctrine contended for.   In the two first there was no limitation over *on the failure of issue*, and there was nothing to distinguish them in principle from *Lowfield* v. *Stoneham*, and *Cambridge* v. *Rouse*, on the authority of which they were decided, though both of them might, on their peculiar circumstances, have been decided the other way.   In *Galland* v. *Leonard* there was an ulterior trust for certain nephews and nieces, in case of the death of the daughters *without issue;* but as the prior limitation to the daughters did not fail, no question ever arose as to the effect of the ulterior trust.   This latter limitation in favor of the nephews and nieces does not seem to have been regarded as affecting the decision at all, and Jarman, in stating the case, 2 Jarm. 694, and Lord Brougham, in quoting it in *Home* v. *Pillans*, p. 23, do not mention it as a part of the case, but treat it as having depended entirely upon the prior clause, limiting the estate to the children in case of the death of their mother.   The

court is respectfully referred to some observations on these three cases contained in the printed petition for reargument heretofore filed in this cause, p. 18 to 22.

The American cases cited were, *Mary Biddle's case*, 28 Penna. R. 62, and *Van Houten* v. *Pennington*, 4 Halst. Ch. R. 272, 745. These cases are also commented upon in the petition for reargument, p. 22, 23.

The former is anomalous, stands alone, is evidently ill-considered, and is contradicted by a long train of decisions in Pennsylvania made both before and after it. And it is irreconcilable with the settled law of our State. *Van Houten* v. *Pennington* was decided upon the *grammatical construction* of the will, and is directly antagonistic to the decision of Lord Denman in *Doe* v. *Ewart*, 24 Eng. C. L. R. 199, where the language was almost identically the same. The court indulges in that case in some observations, that are sought to be made serviceable in this cause, as to the unreasonableness of the supposition that a parent could intend to give to a child any less estate than an absolute fee simple, as to the improbability of a limitation over being intended when the ultimate devisee is of greater age than the first taker, and as to the intendment against a limited estate in money, or personal property, and on the last head the case in 8 How. U. S. R. 263, is cited.

On the first consideration it is enough to say that whatever the testatrix *has done* must be taken as wise and prudent. She was the best judge, and from her decision there is no appeal. This is not the case of a child two or three years old, as in *Van Houten* v. *Pennington*, but of a boy over sixteen, whose character was somewhat developed. On the second point, the suggestion that one of eight devisees was probably older than the first taker is surely unworthy of notice. The validity of a limitation surely does not depend upon the relative ages of the first and last taker. The limitation is upon a *contingency*. It is probably never in the wish or expectation of a testator that a contingent limitation should take effect. But death will come, and the young as well as the old fall its victims. The youngest *may* die first, and to provide for that contingency, should it happen, the limitation is inserted.

As to limitations of partial interests in personal property of all kinds, most of the cases in our courts have been of this kind.. They are sustained in *Harris* v. *McLaren,* 30 Miss. R. 535; and after the case of *Gray* v. *Bridgeforth,* 33 Id. 312, in which a limitation of fifteen hundred dollars in *money,* a *horse, saddle,* and *bridle,* and a *bed* and *bedding,* to one, after the death of the first taker without issue, was held good as an executory devise, we may lay aside all fear of criticism on that subject.

Other points which it was supposed would be raised and relied on by the appellant have been noticed in the brief filed on the first argument of the cause which is referred to.

On the whole case, we submit that the decree of the chancellor disallowing the demurrer to the bill of complaint ought to be affirmed, and the defendant below required to answer.

*John B. Coleman,* on same side.

It is conceded by the counsel of appellant that the limitation in the will is a valid executory devise.

The only question, then, is, *upon what contingency* does the limitation over depend,

The counsel of the appellant insist that it depends upon the contingency of A. W. Sims dying *under the age of twenty-one,* without issue.

The counsel of the appellees insist that it depends upon the death of A. W. Sims, *at any time,* without issue living at his death. To sustain the ,construction for which they contend, the counsel of appellant are forced at the outset to establish the proposition that, by the will, the estate was not to vest in A. W. Sims, and did not vest in him, *unless* and *until* he attained the age of twenty-one.

They are forced into this because, irrespective of all other considerations, if the estate was to vest *at the death of the testatrix,* all the authorities *upon which they rely* would refer the contingency to *that event,* and construe the limitation over as being dependent upon the death of Sims, *in the lifetime of his mother,* without issue.

Under this construction, the seventh clause would be made to read, "Should my said son die *before me,* without lawful issue"

—a contingency already provided for in the sixth clause, where she makes the limitation dependent upon *her surviving him*.

The sixth clause does not, in terms, specify the contingency of her son's dying *without issue*, in her lifetime, but our statute does; and under its operation the sixth clause must be read with the words, "without issue," inserted.

The statute provides that when an estate of any kind is bequeathed to a child or descendant of the testator, and such legatee shall die in the lifetime of the testator, leaving a child or descendant, who shall survive the testator, the legacy shall not lapse, but such estate *shall vest in such child or descendant of such legatee*, in the same manner as if such legatee had survived, &c. Rev. Code, 433, Art. 37.

The sixth and seventh clauses would thus be made to contain the same provision, and one or the other of them would have to be rejected as surplusage.

It is not to be presumed that any court would so construe two distinct substantive clauses of a will as to make one of them but a mere repetition of the other, especially when, as in this case, they are couched in wholly different language. Such a construction will always be given to different clauses as will make each one operative.

" Words," and, *a fortiori*, independent clauses, in a will, " are in all cases to receive a construction which will give to every expression some effect." 2 Jarm. on Wills, marg. page 743, rule 16.

Two propositions are therefore maintained by the counsel of appellant:

1. That the estate did not vest in A. W. Sims until he attained the age of twenty-one years.

2. That the limitation to the appellees was contingent upon A. W. Sims dying *before* he attained the age of twenty-one years, without issue. We will discuss these propositions separately.

I. That the estate did not vest, *until* A. W. Sims attained the age of twenty-one years—that it never would have vested, *unless* he had attained that age. The language of the fourth clause is relied on as sustaining this construction: " *When* my said son arrives at the age of twenty-one years, I give and bequeath to

him," &c.; and it is insisted that the word "when" fixes the time at which the estate is to vest in the son. The word "when" is unquestionably a word expressive of contingency, and ordinarily, when unqualified or unexplained by the context, it denotes the time at which some event with which it is connected is to happen. But it is equally true that its ordinary signification may be limited by the context, and controlled by expressions or directions indicating an intention that it shall bear a different meaning. *Gifford* v. *Thorn,* 1 Stockton, 708; *Letchford's Appeal,* 30 Penna. R. 175.

We think it is apparent upon the face of the whole will that the testatrix had no intention to make the vesting of her property in her son contingent upon his attaining the age of twenty-one years; but on the contrary that her intention most manifestly was, that the legacy should vest immediately upon her death.

1. A. W. Sims was the only child and heir of the testatrix. Had she failed to make a will, her estate would have vested in him at the instant of her death. She has created no intermediate estate, during the interval between her death and his attaining the age of twenty-one years.

Jarman says, it is "impossible to suppose that the testator could intend to make a devise, to take effect at a future period, to the very person who would, in the absence of disposition, take the property by act of law, without intending that it should in the mean time devolve to some other person." 1 Jarm. on Wills, marg. pages 488, 489.

2. The fifth and twelfth clauses of the will manifest, it seems to us, a most unequivocal intention on the part of the testatrix that the property she bequeaths to her son shall vest in him at her decease; and that only *the possession* shall be postponed until he attains his majority. In both of these clauses she requests and urges it upon her son to choose as his guardian the same person whom she appoints her executor; and in the fifth clause she provides that the plantation (which she has devised to her son) shall be carried on by him (Marye) *as her executor,* and *as his guardian,* until her son arrives at the age of twenty-one years. The meaning of this is perfectly plain.

By the first clause she directs that all her debts shall be paid

*out of the first moneys* that shall come into the hands of her executor, *from the sale of the present cotton crop now being gathered.* From this it is evident that she calculated that the crop then being gathered would more than pay every debt she owed. Having given no legacies, and the crop on hand being sufficient to pay all her debts, her estate would be ready for settlement within a very short period after her decease; at which time her executor would surrender his letters testamentary, *and then* his duties as guardian were to commence. When he surrendered his trust as executor he was to take possession of the property as guardian, to hold and manage it in that capacity until her son became of age, and then to deliver it over with its proceeds to her son. Is not this the meaning of the testatrix, fairly and plainly deducible from the language of the will?

If, then, her property was not to vest in her son *until* and *unless* he attained the age of twenty-one, how, we ask, could *his guardian* hold or manage it? The guardian of Sims could only hold it, as the property of his ward; and, if it did not belong to the ward, the guardian would have no right to intermeddle in any way with it.

The provision, then, that this property was to be held and managed by her son's guardian during his minority indicates unmistakably the understanding and the intention of the testatrix that it was to belong to her son—to vest in him—at the moment of her death.

3. If the property was not to vest in A. W. Sims *until* he attained the age of twenty-one—if it was never to belong to him *unless* he attained that age—it follows that, had he died before arriving at his majority, leaving issue, that issue could not have taken under the will. They could only take in the character of *his issue*—as heirs of his body; and if he had no estate which could pass to them by inheritance, they could not, of course, take as his heirs.

Can the intention to produce such a result be deduced from any thing in the will? Does not a contrary intention on the part of the testatrix speak out in every clause? Her paramount object was, that her estate should go to her son, and his issue, should he have any. Her son and his children were the primary

and especial objects of her bounty; they were to take her property to the exclusion of all the rest of the world; and it was only in the event of her son's dying without leaving issue that her collateral kindred were to come in.   This is the *language* of the will; it is, besides, natural, and in accordance with the feelings of a mother.   She contemplates the possibility that her son may have children, and she recognizes the claim which those children—her grandchildren—will have upon her.   Would they have less claim upon her—would the link that bound them to her be severed, or even weakened—by their father dying under the age of twenty-one?   Can it be assumed that it was her deliberate intention to disinherit her son's children, if their father should happen to die the day *before* he attained his majority, and at the same time to leave them her entire estate, if he died the day *after?*   If such were her intention, it would be somewhat difficult to assign a reason for it.

If, then, the principle running through the authorities be true, that whenever it appears from expressions or directions contained in the will, or that whenever it can fairly be deduced from the entire instrument, that it was the *intention* of the testator that the legacy should vest immediately, *such intention will prevail*, may we not ask, is not the intention in this case so manifest as to force the conclusion that the word "when" was only designed to refer to the period at which the *possession* of the estate was to be taken by the son, and not to the time at which it was to vest in him?

4. But if we are in error in all this, there is another view of this question in which we do not think it possible we can be mistaken, and which we consider conclusive.   By the fourth clause the testatrix gives to her son, when he arrives at the age of twenty-one years, "all her estate, both real and personal."   By the seventh clause she provides that "*all such property and its increase, which it is hereby intended he shall inherit from me,*" shall descend, &c.   By the fourth clause she gives her son all her estate; by the seventh she declares it to be her intention that he shall have *all the increase* of that estate.   Now, what does she mean by giving him *all the increase?*   Not, certainly, the increase or profits accruing between the date of the will and the period of her death; that she had already

given to him by the fourth clause, which embraced every thing she might own at her decease. Clearly, she means—and she could have meant nothing else—the increase and profits of the estate during her son's minority, and while it was in the possession of his guardian; the net proceeds of the plantation, while it was in the hands of and worked by the guardian; the property and its entire income. So that, when her son attained the age of twenty-one, he was to receive the *corpus* of all her property, and also all the proceeds and profits of that property, all its income that should be realized under the management of his trustee and guardian during the interval between her death and his attaining the age of twenty-one. Now if there is any principle or rule of construction of wills that may be said to be firmly settled, it is this: that whenever a bequest is given to any one, *if,* or *when,* or *in case,* he attain a specified age, or marry, &c., and in the interval between the decease of the testator and the legatee's attaining the specified age, or marrying, &c., *the interest* of the money, or *the income* of the property, *is directed to be accumulated or appropriated for the use or benefit of the legatee,* the legacy will be held *to vest* immediately upon the death of the testator; and the words *if, when,* &c., referred to the time when *possession* is to be given. 2 Lomax on Exors., 116, 117, secs. 10, 11; 1 Jarm. on Wills, marg. pages 764, 765; *Cadogan* v. *Ewart,* 34 Eng. C. L. R. 200, 201; *Scott* v. *James,* 3 How. Miss. R. 307, 312, 313; *Wade* v. *Grimes,* 7 Id. 425, 432, 433.

The foregoing authorities are *conclusive* that the estate *vested* in Sims at his mother's death, and that *possession* alone was postponed until he should attain his majority, and have, in law, the capacity to manage the property for himself.

5. But again. Should it be held that the estate did not *vest* in Sims *until* he arrived at the age of twenty-one, what became of it in the interval? The testatrix must have intended that during this interval it should devolve to some other person. 1 Jarm. on Wills, marg. pages 488, 498. To whom, then, was it given? It must have been to her executor, for, by the third clause, he was to have possession, make crops, &c. Marye, the executor, must therefore be held to have taken that partial interest, as there is no other person named in the will who could take it.

If so, there was a partial interest carved out of the fee for the executor, with a *remainder* to the son. This, upon all the authority, gave to the son a *vested estate* in remainder, at his mother's death. 1 Jarm. on Wills, marg. pages 733–735. So that, in any aspect of the case, A. W. Sims took a *vested estate* at his mother's death.

6. In the sixth clause the testatrix provides for the estate *never vesting* in her son, and in that event she gives it to her collateral relations. The seventh clause, being a distinct one, must be held as intended to provide for a *different* event, to wit, the *estate's vesting;* and in that case also she gives it to her collateral relations. These studious provisions for her own relations, in two distinct clauses, indicate a fixed and settled purpose that they should take the estate, if her son died and left no issue capable of enjoying it.

7. The seventh clause provides that, if her son should die without lawful issue, "all such property and its increase, *which it is hereby intended he shall inherit from me,*" shall descend, &c. All the property which it was intended he should inherit, &c., was to go over to her relatives. That property, it is said, was to *vest* in him on his attaining the age of twenty-one. If so, then the property which should *vest* in him, of necessity, by the terms of the seventh clause, was to go over to her relations.

II. It is insisted by the counsel for the appellant that the true and necessary construction of the will is, that the limitation over is only to take effect upon the contingency of A. W. Sims dying without issue, *under the age of twenty-one years.*

Now it is very certain that no such contingency as the dying of A. W. Sims *under the age of twenty-one years* is expressed in the will. From the first to the last clause of that instrument *the dying of A. W. Sims under the age of twenty-one years* is never mentioned, alluded to, or hinted at. The seventh clause, which is the one under which the appellees claim, makes the limitation dependent upon the simple dying of A. W. Sims, *without lawful issue,* wholly irrespective of the time at which he should die: "It is my will and desire should my said son, Allison Wade Sims, die without lawful issue," &c.

It is equally certain that no *intention* on the part of the testa

trix to make the limitation over dependent upon the death of her son *under the age of twenty-one years*, can be deduced from any thing that is contained in the will. Her intention was, in the first place, as has already been shown, to give her property to her son and his children, should he have any. If he died, leaving issue, that issue was to take. Her intention, in the second place, was, that should her son die without issue, then her property should go to *her* relations,- and not to *his* heirs. No one can read her will, without being satisfied that such were her intentions. *Cadogan* v. *Evart*, 34 Eng. C. L. R. 199.

Upon what ground, then, is the court invoked to interpolate into the seventh clause of the will, the words, "*under the age of twenty-one years*"? The counsel of the appellant say that it is in obedience to an inflexible rule of construction that, whenever there is an ambiguity as to the time when the contingency shall happen upon which the limitation over is dependent, the court will refer it either to the period of the death of the testator, or to the time of the vesting of the estate in the first taker; in other words, that the contingency must happen either in the lifetime of the testator or before the estate vests. This abstract proposition may be true, but it does not and cannot apply to this case, for the simple reason that there is *no ambiguity* here. The class of cases to which the rule applies, and to which *alone* it is applied, are those in which the limitation over is upon the *death* of the first taker *simply*, without any collateral circumstance to qualify it. These are termed "substitutionary gifts," or "alternative dispositions."

When an estate is given to A, and "in case of his death," or "if he die," or "should he happen to die," &c., then to B, this, though in form a limitation upon a contingency, is not so in fact, for the reason that *death*, being the most certain of all events, can never be said to be contingent; *it must and will happen*. The *time* of its happening is contingent, and as the testator uses language showing that he contemplated a contingency, the courts carry out his intention by fixing *a time* within which the death must occur, thus making the limitation in reality contingent. *This time*, in conformity with what may be supposed to have been the testator's intention, they have settled

as being either *before* the death of the testator, or *before* the vesting of the estate in the first taker. 2 Jarm. on Wills, marg. pages 659, 660; 2 Powell on Devises, p. 758, ch. 37; *Cambridge* v. *Rouse*, 8 Ves. Jr. 21; *Webster* v. *Hale*, 8 Id. 413; *Home* v. *Pillans*, 2 Mylne & Keene, 20, 21.

But it is equally well settled (and a moment's reflection shows that it must be so) that the foregoing rule of construction *is never applied* where the death is coupled with any circumstance that makes it contingent, as "if he die without issue," &c. "Dying" is an inevitable event, but "dying without issue" is clearly contingent. 2 Powell on Devises, 764, 765; 2 Jarm. on Wills, 670, 687–690, and the cases cited and commented on.

In support of the rule of construction which the counsel of the appellant contend must be applied to the will in this case, they cite many authorities. The English authorities on which they rely will be found generally, if not invariably, cases of pecuniary legacies; in reference to which, on account of the supposed impolicy and inconvenience of tying up or fettering the free circulation of money, the English chancery courts have constructed a very refined and artificial system, which is not applied to lands or interests of a permanent character, such as slaves in this country are. They will also be found to be cases in which there was either no limitation over, or in which no question arose as to the validity of such limitation; and that in not one of them is a question similar to the one now before the court presented—the case of a devise in fee with a limitation over in the event of the first devisee dying without issue.

*Galland* v. *Leonard*, 1 Swanst. 161; *Home* v. *Pillans*, 2 Mylne & Keene, 22. See the statement of these two cases, and the comments upon them in 2 Jarm. on Wills, marg. pages 694–696.

*Harvey* v. *McLaughlin*, 1 Price, 204; *Thackeray* v. *Hampson*, 2 Sim. & Stew. 214. See the comments on these two cases in the printed petition in this case, pages 18, 19.

*Van Houten* v. *Pennington*, 4 Halst. Ch. R. 745–750. This case was decided upon a question of grammatical construction purely. The word "but" was held to connect two sentences in such a way as to qualify the latter by the former, and to render it necessary to read the latter as containing the words, "die

before arriving at the age of twenty-one years," which words were used in the first but omitted in the last sentence. The judge then goes on to assign various reasons why, in his opinion, the construction given by the court to the will was what were or ought to have been the intention and desire of the testator under all the circumstances, &c. These, however, were merely arguments used to sustain and strengthen his conclusion, not the grounds upon which that conclusion was based. They are therefore only to be treated as the *arguments of a judge,* and not as *the decision of a court.* The *point decided* was, that the conjunction, "but," connecting the two sentences rendered the particular construction inevitable.

*Mary Biddle's case,* 28 Penna. R. 62. This case is not law even in Pennsylvania—that is, if it is correctly and fairly reported, it is antagonistic to the previous decisions of that court. *Eichelberger* v. *Barnitz,* 9 Watts, 450; *Heffner* v. *Knepper,* 6 Watts, 18; *Clark* v. *Baker,* 3 S. & R. 476. And it has been virtually if not expressly overruled in *Rancel* v. *Cresswell,* 30 Penna. R. 159, 161; *Criley* v. *Chamberlain,* Id. 162, 163.

But can this be now considered an open question in Mississippi? Has it not been settled, and settled conclusively, by the 26th section of our Statute of Conveyances, and by the express and solemn adjudications of this court? The statute provides that "Every contingent limitation in any will, made to depend upon the dying of any person without issue, shall be held and interpreted a limitation to take effect *when* such person shall die not having such issue living at the time of his death, &c., unless the intention of such limitation be otherwise expressly and as plainly declared, &c." Hutch. Code, 610, sec. 26.

Now here is a contingent limitation in the will of Mrs. Kenley, made (in positive and unqualified terms) to depend upon the dying of her son without issue. The statute says that just such a limitation *shall* be held and interpreted a limitation to take effect *when the son shall die,* not having such issue living at the time of his death.

The seventh clause of Mrs. Kenley's will provides that should her son die without lawful issue, the property bequeathed to him shall go to the appellees. The statute construes this to be

a limitation to take effect *when* the son shall die—*at any time that he shall die*—no matter how remote that period may be—not having such issue living at the time of his death, &c.

And now this court is asked by the counsel of the appellant to disregard and annul this imperative statutory construction—to repeal the statute—and to construe the limitation as one to take effect, not *when* he should die, but *if* he should die at a period long anterior to his actual decease. The statute construes the words used in the seventh clause of the will to mean the · dying of the son without issue *at the time of his death.* The court is asked to construe them as meaning his dying without issue *before he arrived at the age of twenty-one.*

It has already been shown not only that "the intention of this limitation *is not otherwise expressly* and *as plainly* declared on the face of the will creating it," but that the whole will indicates most clearly that the intention of the testatrix was in strict accordance with the construction which the statute puts upon the language she used. That language is technical; the words, "die without issue," have a technical meaning, and the testatrix is presumed to have used them in their technical sense. 2 Jarm. on Wills, marg. page 744, 17th rule. All the operative words in the fourth and seventh clauses of the will are technical words, and have a fixed and settled signification in the law.

In England, a devise to A and his heirs forever, with a sub-sequent limitation over, in case A die without issue, is invariably held to create an estate tail in A. And in this country, wherever they have a statute similar to the 26th section of our Statute of Conveyances, such an estate is held to be a determinable fee.

This, then, being a devise to A. W. Sims and his heirs, with a subsequent limitation over in the event of his death without issue, A. W. Sims *must* be held to take under the will either an *estate tail* or a *fee determinable,* as the limitation shall be held to be contingent upon a *definite* or an *indefinite* failure of issue; and this upon the English and American authorities, irrespective entirely of the decisions of this court. *Doe* v. *Rivers,* 7 Term R. 276, cited in 6 Cruise's Dig. ch. 12, sec. 17, p. 255, 256; *Fitzgerald* v. *Leslie,* 3 Bro. Parl. Cas. 154; *Roe* v. *Avis,* 4 Term R. 605, cited in 6 Cruise's Dig. ch. 12, sec. 14, 16, p. 254, 255; 4

Kent's Com. 274; 2 Jarm. on Wills, marg. page 237; *Maurice* v. *Graham*, 8 Paige Ch. R. 484–486; *Rancel* v. *Cresswell*, 30 Penna. R. 158; *Sharp* v. *Thompson*, 1 Wharton, 139.

The foregoing authorities are also a conclusive refutation of the position, taken by the counsel of the appellant, that the courts will never, if they can avoid it, so construe a subsequent clause of a will, as to narrow or cut down a greater estate or interest conferred by a preceding clause.

But we have said, and we now proceed to show, that the questions presented in this case have all been settled by well-considered and recent adjudications of this court, and settled adversely to the positions assumed by the counsel of the appellant. We refer especially to the cases of *Jordan* v. *Roach* and *Gray* v. *Bridgeforth.*

*Jordan* v. *Roach*, 3 George, 600. Roach, by his will, devised his estate, real and personal, to his five children and their heirs forever. By a subsequent clause he provided that, when his daughter Mary should become of age or marry, his executors should give her fifteen hundred acres of land, and purchase for her thirty negroes, &c.; and he then says: "To make my intention plain, the property devised and bequeathed to my daughter is for her sole and separate use and behalf, and her heirs forever; *but should she die without issue*, or if her child or children surviving her should die before arriving at the age of twenty-one," then the estate to go over, &c.; p. 600, 601.

Now, according to the argument of the counsel of the appellant, the words, "*but should she die without issue,*" must be interpreted to mean, "should she die without issue, *before marriage* or *before attaining the age of twenty-one,*" if her estate should be held not to vest until she married or became of age; or to mean, "should she die without issue, *in the lifetime of the testator,*" if her estate should be held to vest immediately at testator's death. This must be so, for there is just as much ambiguity here as there is in the will of Mrs. Kenley, and the principle enunciated by the counsel applies with as much force to the one case as it does to the other. As, therefore, the daughter Mary *did survive the testator*, and *did marry*, this court should have held, according to the argument, that upon the happening of

one or the other of these two contingencies, the estate vested in her in *absolute fee simple*. But the court did not take this view. They decide (at p. 604) *that she did not take a fee simple*, but that she took what at common law would have been an estate tail; and at p. 608, that, under the provisions of the 26th section of our Statute of Conveyances, she took "*an estate in fee, subject to be determined by the event of her death without issue* THEN. *living.*'"

*Gray* v. *Bridgeforth*, 4 George, 312. By the second clause of his will the testator bequeathed to each of his children, *when* they should become of age, or marry, one horse, &c., and fifteen hundred dollars in money. By the sixth clause he directed that, at the death of his wife, the balance of his property should be equally divided between his children or their heirs. By the fifth clause he provided that, if any of his children *should die without heirs*, then the property devised to them should be equally divided among the balance of his children and the heirs of their bodies. The specific legacies were all paid in 1847, the widow died in 1848, and the balance of his estate was then divided. In 1851, Minerva, one of the children, (after having received her share of the estate,) married Gray, and died in 1854, without ever having had issue. The bill was filed by the children of the testator against Gray, the surviving husband of Minerva, to recover from him the property which Minerva had received under the will of her father. P. 313, 314.

Here, then, is a will identical in all its features with the will of Mrs. Kenley, *as construed by the counsel of appellant*. The specific legacy was given to Minerva, *when* she should become of age or marry. Her portion of the residue of his estate she was to have at the death of testator's wife. And in a subsequent clause there was a limitation over of all the property bequeathed to her, *if she should die without issue*. The facts, too, are substantially the same as the facts in the case at bar. Minerva became of age and received her specific legacy, her mother died, and she received her portion of the residue of the estate; and seven years afterwards she died without issue.

Now, if the argument of the counsel of the appellant be correct, Minerva took an absolute indefeasible estate in the specific

legacy *as soon as she attains the age of twenty-one years,* and a like estate in the residue of the property *at the death of her mother;* and when Minerva died, all of that property should have gone to *her* heirs or distributees. But this court did not think so. They held that it was a valid executory devise, and that the property vested absolutely in the brothers and sisters of Minerva, immediately upon her death, leaving no children. P. 334.

Is not this decision conclusive of the case at bar? Can the positions taken by the counsel of the appellant be sustained, or can the claim of the appellees to the property in controversy be defeated, without first overruling *Gray* v. *Bridgeforth?* We say, it is a moral impossibility.

It may possibly be urged that as Bridgeforth's will was made in Tennessee, the decision turned upon the laws and decisions of that State, and that therefore it is no authority in this case. To this we reply that the decision of the points we have been considering *did not turn* upon the law or adjudications of Tennessee. These points were decided upon general principles of law applicable as well to Mississippi as to Tennessee, and alike recognized in both States. *One question,* and only one, was decided under the laws of Tennessee. In that State they have no such enactment as is contained in the 26th section of our Statute of Conveyances. Consequently, a limitation contingent upon "a dying without issue" is in that State held to be a limitation upon an *indefinite* failure of issue, unless a contrary intent plainly appears upon the face of the instrument. One of the main points relied upon by the counsel of Gray was, that under the law of Tennessee the limitation in the will of Bridgeforth was upon an *indefinite* failure of issue, and that therefore it was void for remoteness. This court, however, held that a contrary intention did appear upon the face of the will, and consequently that the limitation was upon a *definite failure of issue,* and therefore valid. The only difference, then, between the two cases is, that in the case at bar we have the advantage of the statutory rule of construction in our favor, while in the other case the rule of construction was adverse, and had to be overcome by deducing an opposite intention from the face of the will. So soon, however, as it was

settled that even under the law of Tennessee the limitation was not void for remoteness—and such would most certainly have been the decision under our statute—no further reference was made to Tennessee law or adjudication, and the case was decided upon general principles applicable equally to both States.

*George L. Potter*, on same side,

Filed an elaborate argument, discussing all the points involved in the case; but, owing to the space already devoted to arguments of counsel in this case, it is not given.

HANDY, J., delivered the opinion of the court:

This bill was filed by the appellees, seeking to recover from the possession of the appellant certain slaves claimed by them as legatees in the will of Phebe A. Kenley, deceased.

The material clauses of the will necessary to be taken into view in the present case are the following:

"Item 3. I direct that my executor will carry on the plantation, making cotton, corn, &c., until my son Allison Wade Sims shall arrive at the age of twenty-one years."

"Item 4. When my son Allison Wade Sims arrives at the age of twenty-one years, I give and bequeath to him all my estate, both real and personal."

"Item 5. It is my desire that my son Allison Wade Sims will select as his guardian the same person who I appoint as my executor, and that the plantation be carried on by him, as my executor and as his guardian, until my said son arrives at the age of twenty-one years."

"Item 6. It is my will and desire that in case I survive my said son Allison Wade Sims that, in such event, one-half of all my estate be and is hereby bequeathed to my esteemed cousin, Isaac B. Conger, and the remaining half be and is hereby bequeathed to the children (seven in number) of my beloved brother, Jonathan L. Conger," (naming them).

"Item 7. It is my will and desire, should my said son Allison Wade Sims die without lawful issue, that all such property and its increase which it is hereby intended he shall inherit from me

shall descend in like manner and proportions as set forth in item sixth."

" Item 8. It is my will and desire, should my estate descend, as contemplated in items sixth and seventh, to Isaac B. Conger and the children of my brother, Jonathan L. Conger, that, in such event, the said Isaac B. Conger shall deliver and make a valid title of a negro woman not over twenty years of age to my beloved sister, Jane Cummings, of De Soto county, out of the lot of negroes intended to be bequeathed to him."

Item 9 directs, in the same contingencies stated in item eighth, that Isaac B. Conger shall pay to her " esteemed friend, James T. Marye, the sum of five hundred dollars."

Item 12 appoints James T. Marye her executor.

The bill states that the testatrix died in 1847, and that the will was duly admitted to probate as to her personalty, there being but two witnesses to it; that Allison W. Sims became of age in 1851, and received from the executor the property bequeathed to him, and died in 1858 unmarried and without issue; since which time the slaves mentioned in the will have come to the possession of the appellant; and the appellees claim title to the same under the seventh item of the will.

To this bill a demurrer was filed, which was overruled, and thereupon this appeal was taken.

The bill is based on the construction of the will, that the limitation over, contained in the seventh clause, took effect on the death of Allison Wade Sims, without issue, whether he died before or after reaching the age of twenty-one years. On the contrary, it is contended, in behalf of the appellant, that the limitation over in favor of the appellees was intended to take effect only on his dying under twenty-one years of age and without issue, and that his estate became absolute on his surviving the testatrix and attaining to that age. These respective claims depend upon the construction to be given to the words, " *die without lawful issue*," and the limitation over thereupon, contained in the seventh item of the will.

The rule is well settled, by numerous cases, that in a bequest to A, and, " in case he dies," or " in the event of his death," *simply*, without further words of contingency, over to B, the contingency

intended is the death of A *before* the testator; and hence, if A survived the testator, that he takes absolutely.  The reason of this rule is, that death, being a certain and inevitable event at some time, cannot be supposed to be the contingency really intended by the testator, and, therefore, that construction must be resorted to to ascertain the contingency contemplated; and as no reasonable contingency can be suggested to the mind from the words used, but that of the legatee dying before the testator, that is adopted as the contingency intended in such cases.  *Hinkley* v. *Simmons,* 4 Ves. Jr. 160; *King* v. *Taylor,* 5 Id. 806; *Cambridge* v. *Rouse,* 8 Id. 12; *Webster* v. *Hale,* 8 Id. 410; *Ommaney* v. *Beavan,* 18 Id. 291; *Wright* v. *Stephens,* 4 Barr. & Ald. 674. These are cases where the terms of contingency are *simply* the death of the first taker and a limitation over in that event.

In some cases, the death of the first taker has been held to mean, his death at any time, notwithstanding the terms of limitation were *simply* " upon his death."  But this has been by reason of other expressions or dispositions in the will, indicating that such was the intention or justifying such interpretation.   Such are *Billings* v. *Sandom,* 1 Bro. C. C. 393; *Nowlan* v. *Nelligan,* Id. 489; *Lord Douglas* v. *Chalmer,* 2 Ves. Jr. 501; *Chalmers* v. *Storil,* 2 Ves. & Bea. 222.

Another class of cases is, where, by the terms of the will, the gift to the legatee is *not immediate, but in remainder,* or *preceded by a life or other partial interest,* with an executory limitation over " in case of the death of the legatee," or like words.   In such cases, the words of contingency will be applied to the period when the remainder takes effect in possession, viz., the determination of the preceding interest, and not to the death of the testator.   Thus, if such legatee die before the determination of the preceding interest, the estate would go over to the ulterior legatee; but if he survive the party holding the preceding life-interest, he will hold absolutely.  1 Roper, Legacies, 409; 2 Jarm. on Wills, 693, 665.   Of this class are the cases of *Galland* v. *Leonard,* 1 Swans. 161; *Harvey* v. *McLaughlin,* 1 Price, 264; and *Da Costa* v. *Keir,* 3 Russ. 360.

But the rule first stated was established on the reason of necessity, from the absence of any other period to which the

contingency of death can be referred in the cases to which it is applied; and, therefore, when there are other terms or expressions employed, properly applicable to a contingency which might take place after the testator's death, such terms will be construed according to their established legal import. When the words furnish, according to legal rules, a plain reference to the contingency upon which the ulterior limitation is to take effect, there is no occasion for seeking another reference by construction, and the terms of limitation must have their appropriate legal force, unless controlled by other parts of the will. For, otherwise, violence would be done to the cardinal rule, that where technical words are used in a will, the testator is presumed to employ them in their established legal sense, unless a contrary intention clearly appears from the context.

This case does not come within either of the three classes of cases above mentioned.

Upon the face of the fourth and seventh items of this will, a plain case is presented of an estate in fee in A. W. Sims, on his reaching majority, determinable *on his dying without issue;* and upon that contingency, of an executory devise over to the parties named in the sixth item. 1 Jarm. on Wills, 237; *Jordan* v. *Roach,* 32 Miss. R. 481–604. The will contains no clause showing that the words of limitation were not used by the testatrix in their established legal sense, and therefore they must be understood in that sense. By force of our statute, the words, "dying without issue," mean "a limitation to take effect *when such person shall die,* not having such heir, issue, &c., *living at the time of his death,* or born to him within ten months thereafter," &c. In the absence of all expressions showing a different intention, the words of limitation must be taken to refer to the time of the death of the testatrix. Such was the decision of this court upon the provision of a will similar to the present—*Jordan* v. *Roach,* 608; which is inconsistent with the construction here contended for, in behalf of the appellants, that the dying without issue must be referred to the death of the legatee *before his majority.* And this view is conclusive against the construction insisted upon by the appellant.

But various authorities are relied on in support of this con-

struction, which it is proper to examine.   *Galland* v. *Leonard,* 1 Swanston, was a case in which the testator bequeathed the residue of his personal estate in trust for his wife *for life,* and after her death to be divided between his two daughters; and "in case of the death of his daughters or either of them, leaving a child or children living," to apply a sufficient part of the interest to their maintenance during minority, and upon their reaching twenty-one to distribute the capital among them, the children to receive the same share their mothers would have been entitled to if then living; remainder over if the daughters left no issue attaining twenty-one years. The daughters survived the testator and his widow, and it was held that the interest of the daughters was defeasible in the event of their dying during the life of the widow, and if they survived her that their interests became absolute. This was held upon the general context of the will, which was considered as showing that the testator intended the death of the widow as the period of distribution to his daughters, and that the provision in favor of their children in case of their death had reference to the daughters dying during the life of the widow, in which event the children were to receive the shares to which their mothers would have been entitled if living.

The case is not applicable to the present will, but belongs to the third class of cases above mentioned, where the gift is not immediate, but is preceded by a life-estate in another, with a limitation over in case of the death of the legatee; in which case, as we have above seen, the executory limitation over will be referred to the period of determination of the preceding interest, and not to the death of the testator. *Harvey* v. *McLaughlin* is of the same character.

*Thackeray* v. *Hampson,* 2 Sim. & Stew. 214, was a bequest to two granddaughters, "in trust, until they came of age or marry, the interest in the mean time to be paid to them; but if one of them die before marriage or (coming) of age, then to go to the survivor, or her child or children; but if they should both die leaving no issue, giving them the power to leave it by will as they think fit." One of them married and the other attained twenty-one years. There could be no room for controversy in this case. An absolute estate was plainly given upon the legatees

coming of age or marrying; which events had taken place; and the decision is, that they thereupon each took an absolute vested interest. It was therefore wholly unnecessary to determine what was meant by the clause giving them power to leave it by will, "should they both die leaving no issue;" for there was nothing else in the will qualifying this absolute interest, and it is beyond doubt that this clause could not have such an effect under the circumstances of the case. But if it had been necessary to determine the meaning of the contingency of "dying leaving no issue," it is clear that it was properly referable to their death before their shares became absolutely vested, because it is immediately connected with the preceding clause—"if one of them die *before marriage or of age,* then to go to the survivor or her child or children;" "but if they both die leaving no issue," then giving them power to leave it by will. The latter provision manifestly has reference to the contingency of their *dying before marriage* or *coming of age,* which immediately precedes it and which is connected with it by the word "*but;*" thereby showing that the same contingency was meant in both clauses. In any view, the case is clearly not an authority for the construction here contended for in behalf of the appellant.

*Home* v. *Pillans,* 2 Myl. & Keene, 15, 7 Eng. Ch. R. 238, was a bequest to nieces "when and if they should attain their ages of twenty-one years, to their sole and separate use; and in case of their death or of either of them, leaving children or a child, I give and bequeath the share or shares of such nieces or niece so dying unto their or her respective children or child." In support of the view of the case taken by the Lord Chancellor, that the gift to the nieces was absolute unless they died under the age of twenty-one, and that that was the contingency contemplated upon which their children should take, he relies on the authority of the first and third classes of cases above referred to, p. 242, Eng. Ch. R.; and refers to the particular provisions of the will—that the bequest was to be for "their sole and separate use, free from the debts or control of their husbands"—as evincing an intention that they should vest in the nieces absolutely at a particular time, p. 243. As to the cases relied on by him, it appears to be clear that they are not applicable to the case

being, 1st, cases of bequests over "in case of death" *simply* of the first legatee, in which the reference is held to be to *the death of the first legatee before the testator ;* and, second, cases where the gift was not immediate, but preceded by a partial estate in another, with limitation over in case of the legatee's death; in which cases the limitation over is applied to the period of determination of the preceding interest, and not to the death of the testator. The case seems to be unsupported by other English authority, and the correctness of the decision is doubted by the learned author of Jarman on Wills, 2 Jarm. 696, not without much reason ; for it appears to be in opposition to the settled principle, that a reference will never be indulged against the plain force of technical words. It is not easy to perceive upon what principle it can be maintained, unless it be on the ground of the particular provisions of the will showing an intention that the legacies should vest absolutely in the nieces on their coming of age. But in this respect it is not analogous to the present case, which contains no such provisions which can control the force of the technical language employed. It extends the rule of *reference* beyond any case decided in England ; and, if followed, would lead to the establishment of the dangerous rule of disregarding dispositions of property clearly resulting from the use of well-defined technical words, and of letting in any arbitrary rule of disposition which might appear to the court, in any particular case, to be most consonant with justice and the supposed probable intentions of the testator, deduced from the circumstances of the case. But if the decision be correct upon the case presented, it is not applicable to this case. The will contained no limitation over on the nieces "dying *without* issue," which by force of our statute must be referred to the time of the death of the first taker. What was matter of doubt in that case as to the meaning of the words, "in case of the death of the nieces *leaving children,*" is free from doubt under our law fixing the import of the words, " dying without issue," and the time at which a limitation over thereupon is to take effect.

*Barker* v. *Lea,* 1 Turn. & Russ. 413, 11 Eng. Ch. R. 224, was a bequest to nephews and nieces on their respectively attaining twenty-five years, with a direction to trustees to apply the profits

to their maintenance; and, in case of the death of any or either of them unmarried and without issue, then giving the shares of those so dying to the survivors. A nephew and a niece died under twenty-five, unmarried, and without issue. The question was, whether the deceased nephew and niece took a vested interest, or whether their shares went to the survivors; and it was held that they went to the survivors, because the language of the will plainly showed that the fund was to be kept together until the parties respectively attained the age of twenty-five, and, in the mean time, that they took no vested interest. Under the peculiar phraseology of the will it is very clear that the contingency of the parties dying without issue and unmarried had reference to their death before reaching the age of twenty-five, and the decision is manifestly correct. But the case did not involve the question here presented, and really turned upon the point whether the legacies to the deceased parties were vested or contingent. The case is, therefore, not an authority in support of the construction of the will in this case contended for in behalf of the appellant.

The decision of the case of *Van Houten* v. *Pennington,* 4 Halsted Ch. 745, turned upon the grammatical construction put upon the clause of ulterior limitation in the will; and it was held that the devise over was connected primarily with the time of its enjoyment by the devisee, and that the period of its taking effect applied to the event of the devisee dying before coming into possession, which was referred to in the clause immediately preceding that containing the limitation over. The case was decided upon the peculiar phraseology of the will, which, first, gave an absolute estate unconditionally to the devisee; secondly, directing that the property should be rented out for the benefit of the devisee *until he reached the age of twenty-one years,* who *in the mean time* was to receive, out of it, an education and support; and, thirdly, " *but if he should die leaving no children,*" then over. It was considered that the limitation over was not intended as a qualification of the absolute estate first given, but had reference to the period when this estate was to come into possession, and the contingency that the devisee might die before attaining his majority and coming into possession. It appears to be a case

somewhat analogous to that of *Thackeray* v. *Hampson*, and it is one resting upon its peculiar circumstances.

The case of *Mary Biddle's estate*, 28 Penna. R. 62, is relied on by the appellant; but the decision is plainly not in accordance with established doctrine, and is inconsistent with many decisions in that State. *Eichelberger* v. *Barnitz*, 9 Watts, 450; *Rancel* v. *Cresswell*, 30 Penna. R. 158; *Criley* v. *Chamberlain*, Id. 163.

Other cases are cited in behalf of the appellant; but they fall within one of the three classes of cases above referred to, and need not be particularly examined.

After a careful reconsideration of the case, we are satisfied that the view we took of it on the first argument is not correct; and that the decree overruling the demurrer should stand.

The decree is, therefore, affirmed, and the cause remanded, and the appellant required to answer the bill within sixty days.